**J. B. MITCHELL et ux., Appellants,**

v.

**TEXAS ELECTRIC SERVICE COMPANY,**
Appellee.

No. 15786.

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 8, 1957.

Rehearing Denied March 8, 1957.

Martin & Moore and Elvin E. Tackett, Fort Worth, for appellants.

Cantey, Hanger, Johnson, Scarborough & Gooch, and Jack C. Wessler, Fort Worth, for appellee.

RENFRO, Justice.

This is a condemnation case. Texas Electric Service Company, plaintiff, obtained an easement over 2.02 acres out of a tract of 50 acres belonging to defendants, J. B. Mitchell and wife.

The jury found: (1) the market value of the 2.02 acre tract immediately before condemnation was $1,500 per acre; (2) the 2.02 acre tract had no market value after the condemnation; (3) exclusive of the 2.02 acre tract, 32 acres of the remaining land were reduced in market value by reason of the easement; (4) the value of the 32 acres was $1,500 average per acre immediately before the condemnation; and (5) immediately after the taking had an average market value of $1,155 per acre.

Judgment was entered on the verdict on June 25, 1956, awarding the Mitchells $14,070, that sum being the amount found by the jury to be the value of the 2.02 acres and the diminution of the remaining 32 acres.

The plaintiff filed a motion for new trial. At the hearing thereon, June 29, 1956, the court, apparently on its own motion, entered what was entitled "Order for Remittitur" but was in reality a modified judgment reducing the amount of the June 25th judgment to $7,553.

After the entry of the judgment as modified, defendants requested findings of fact and conclusions of law.

The court found that the finding in answer to issue No. 2, that the 2.02 acre tract had no market value after the taking, was not supported by the evidence, but that the credible testimony showed such tract to have a value of $100 per acre after the taking. The court found that the jury's finding that 32 acres of the defendants' remaining land were diminished in value was not based on any credible testimony; that the credible testimony showed the highest amount of remaining acreage damaged was 5.4 acres, and the amount of reduction in market value for said 5.4 acres was $875 per acre.

The defendants contend the court erred in setting aside the jury's finding in answer to issue No. 2 and substituting the court's finding that the 2.02 acres had a market value of $100 per acre after the taking of the easement.

Although there was evidence the 2.02 acres contained in the easement had no market value after the taking, and the jury so found, what the plaintiff took was merely an easement, which being in law less than the fee title, can in law only entail compensation for less than the fee title. The action of the court in finding a value after the taking, based on the evidence most favorable, as it was, to defendants, is fully supported by Texas Pipe Line Co. v. Hunt, 149 Tex. 33, 228 S.W.2d 151.

Defendants contend in related points of error the court erred in holding that the jury's answer to issue No. 3 was not based on credible testimony and substituting the court's own finding that the credible testimony showed only 5.4 acres of the remaining land to be damaged as a result of the

condemnation, and, based thereon, limiting recovery to such 5.4 acres.

There was a total of 50 acres in defendants' tract of land, but for purposes of this appeal we are concerned with the 34½ acres described by the parties as the "thick" part of defendants' land, and which is bisected by the power line erected by plaintiff. There are two towers on defendants' land, with three wires on one side and space for additional wires. The line carries 138,000 volts. The easement gives plaintiff the right of ingress and egress across the remainder of defendants' land.

All witnesses agreed the best use of defendants' land was for residential or subdivision purposes.

The witness Thomas, real estate dealer familiar with the property and its market value, testified about 30 acres were affected by the easement and were worth $500 or $600 per acre less after the line was put across defendants' land; before the line was put across the property was worth $1,500 to $2,500 per acre. In cross-examination he repeated that the "whole" 30 acres were reduced in value about fifty per cent.

Mitchell testified there were 34½ acres in the area in which the easement was located.

Witness Card, real estate dealer familiar with the property, having his attention particularly directed to the 34½ acre tract, testified the market value before the taking was between $1,500 and $1,750 per acre. He was asked if the line had any effect on the value of *that property*. It is obvious *that property* referred to the 34½ acre tract. The witness answered it was damaged fifty per cent or more. On cross-examination he was asked about this "entire 34½ acres" and "this 34½ acres." He again testified the tract was damaged at least fifty per cent.

Witness Cunningham, in the business of real estate and construction, testified the whole 50 acres were worth $750 per acre, the 2.02 acre tract, $1,000 per acre. He testified none of the remaining land was damaged.

Witness Llewellyn, real estate dealer familiar with the property, testified the 2.02 acre tract was worth $1,000 per acre before the taking, and $100 per acre afterward. He testified only 5.4 acres of the remainder, immediately adjacent to the 2.02 acre tract, were decreased in value.

Witness Morgan, real estate dealer familiar with the property and its value, was told there were 34½ acres in that particular area about which he was being questioned. He was then asked the market value per acre of the property before the line was erected. He answered $1,500. He testified the high line affects the fair market value of the land through which it runs, but did not express an opinion as to the amount the remainder was damaged.

Witness Anderson, real estate dealer familiar with the property and its value, was questioned about "particularly the 34½ acres up here * * *." He testified it was worth $1,500 per acre before the taking. He was asked, "How much per acre do you think it damaged this area of 34½ acres there?" He answered at least $500 per acre. A second time his attention was called particularly to the 34½ acres and he answered at least $500 per acre.

There is evidence in the record that the entire proposed business center would be damaged by reason of the power line; that the power line affects the fair market value of the property through which it passes; that a great many people are averse to being near such a power line; that the right of egress and ingress acquired by plaintiff over all the rest of the property not taken detracts from the value of the property not taken; that the remaining property was reduced in value because the easement and line thereon angle through it and "splits right through" the property; that the two tower lines have an

effect on the development potential for the balance of the property.

The plaintiff did not move the court to disregard the jury's findings.

It is apparent from the above that there was evidence before the jury that 32 acres of defendants' remaining land were diminished in value by reason of the easement and the construction and maintenance of the power line. The trial court held the testimony was not credible. In this we think he erred. The credibility of the witnesses and the weight to be given their testimony are for the jury. Housing Authority of City of Dallas v. Hubbard, Tex.Civ.App., 274 S.W.2d 165. When a witness gives evidence that he is acquainted with the market value of the property, he is prima facie qualified to testify concerning value as an expert. His testimony is admissible as such, and then it becomes a question of the weight that may be given it by the jury. City of Houston v. Schorr, Tex.Civ.App., 231 S.W. 2d 740; City of Trinity v. McPhail, Tex. Civ.App., 131 S.W.2d 803.

The number of acres of defendants' remaining land diminished in value by reason of the easement was a fact issue the jury was called upon to determine from the opinions of the several witnesses.

The finding of the number of acres found to be diminished in value having support in the record, we think the trial court was without authority to disturb the finding of the jury, on its expressed belief the testimony was not credible. The jury was the exclusive judge of the credibility of the witnesses. Housing Authority of City of Dallas v. Shambry, Tex.Civ.App., 252 S.W.2d 963; Reeves v. City of Dallas, Tex.Civ.App., 195 S.W.2d 575.

It is to be noted the trial court did not reform the original judgment, or require remittitur because of excessiveness of the amount awarded by the jury per acre, but reduced the judgment because the court did not consider credible the testimony that 32 acres of the remainder were diminished in market value, and found therefore that the verdict was excessive as a whole.

The judgment of June 25th as originally rendered was based upon findings by the jury that, in our opinion, were authorized by evidence; hence, the action of the trial court, in effect, was but the substitution of its judgment on the facts for that expressed by the jury, and was not, in our opinion, justified. Tarrant County Water Control and Improvement Dist. No. 1 v. Fowler, Tex.Civ.App., 175 S.W.2d 694, refused, w. m., 142 Tex. 375, 179 S.W.2d 250.

From our study of the record we have also concluded plaintiff's cross-assignments that we order a remittitur or reverse and remand for a new trial should be overruled.

Plaintiff also presents cross-assignments based on alleged improper jury argument and the court's ruling on admission of certain evidence. We find no reversible error by reason of the matters of which complaint is made.

That part of the trial court's judgment reducing the amount of recovery $100 per acre for the 2.02 acres is affirmed.

The judgment is reformed by restoring to it the amount originally entered by the trial court for the diminution of the value of the remaining land, and, as reformed, is affirmed.

Reformed and affirmed.