Ray HODGES et al., Appellants,

v.

The STATE of Texas, Appellee.

No. 7711.

Court of Civil Appeals of Texas.

Texarkana.

April 19, 1966.

Rehearing Denied May 17, 1966.

Robert G. Scofield, Lewisville, J. Harris Morgan, Greenville, for appellants.

F. William Colburn, Asst. Atty. Gen., Austin, for appellee.

FANNING, Justice.

A condemnation case. The State of Texas instituted proceedings against appellant landowners to condemn for highway purposes 8.814 acres out of a tract of 44.534 acres, leaving a remainder of 35.720 acres. In response to special issues the jury returned a verdict aggregating $20,820.00,

which was higher than the values testified to by witnesses for the State and lower than the values testified to by the witnesses for the landowners. The trial court's definition of "market value" in his charge to the jury, the special issues, accompanying instructions and answers are set out in footnote.[1] Judgment was entered vesting title to the property condemned in the State of Texas and for $41,160.00, the difference in the commissioners' award (previously withdrawn by appellants) and the jury verdict, against the landowners. Appellant landowners have appealed.

The suit was brought to condemn 8.814 acres in two portions out of an irregularly shaped tract of 44.534 acres. There was a lake on the tract which covered approximately 8.63 acres of the 44.534 acre tract. The lake had a dam and a spillway. The taking did not include the lake but the line of the right-of-way taking just touched a corner of the lake on the spillway side of the lake and the taking included the spillway. Aerial photographs, maps and exhibits depicting the area were introduced in evidence by the respective parties and testimony adduced by the parties with respect to many matters including topography, location, zoning, values and other matters relating to the

1. "You are instructed that the term 'market value', as that term is used herein, is the price which the property would bring when it is offered for sale by one who desires, but is not obliged to sell, and is bought by one who is under no necessity of buying it, taking into consideration all of the uses to which it is reasonably adaptable and for which it either is or in all reasonable probability will become available within the reasonable future.
"Special Issue No. 1
From a preponderance of the evidence, what do you find was the market value of the Defendants' tracts of land condemned by the State of Texas for highway purposes at the time it was condemned, considered as served land?
"Answer in Dollars and Cents.
Answer 8.814 acres @ 1500.00 per acres = $13,221.00
"Special Issue No. 2
From a preponderance of the evidence, what do you find was the market value

of the remainder of Defendants' land, exclusive of the land condemned for highway purposes immediately before the condemnation?
Answer in Dollars and Cents.
Answer 35.720 acres @ 1500.00 = $53,-580
"Special Issue No. 3
Excluding increase in value, if any, and decrease in value, if any, by reason of benefits or injuries received by defendants' in common with the community generally and not peculiar to them and connected with their ownership, use and enjoyment of the remainder of the land, and taking into consideration the use to which the condemned land is to be subjected, what do you find from a preponderance of the evidence was the market value of the remainder of defendants' land immediately after the taking of the land condemned for highway purposes?
Answer in Dollars and Cents.
Answer $45,981."

cause, including, of course, the testimony of expert witnesses on both sides.

The 44.354 acre tract, on the date of taking, April 6, 1964, was located within the city limits of Mesquite, Texas, and was zoned for single family residence.

It is in effect the view of the State that appellants' land in question was vacant rough rolling land, irregularly shaped, with a considerable portion of it covered by a lake, without much access, and was located in a sparsely developed area in which there was considerable additional vacant land and that it was not suitable land for multi-unit apartment uses and would not be in the reasonably near future. The State's expert witnesses gave their opinion as to market value of the lands in question and were vigorously cross-examined. The State's expert witnesses assigned a much lower value to the lands than did appellants' expert witnesses and one of appellant owners did.

On the other hand it is in effect the view of appellant landowners that their land was very valuable, and that the highest and best use of it was for apartments. Appellants' witnesses assigned considerably higher values to the property than did appellee's witnesses.

Appellee presented its engineering witness, Fallwell, who testified to the acreages involved, proved up certain exhibits, described the land in general and testified as to the type of construction to be placed on the part taken.

Appellee presented Smith, a real estate appraiser, who testified that he had been employed to appraise the land in question of appellants, and to the investigation he had made in his appraisal. Mr. Smith proved up certain photographic exhibits and told the approaches he used, and testified concerning the sales of properties he considered comparable to the subject property that he had found in the area and the prices for which they were sold. Mr. Smith then testified that in his opinion the value of the part taken was $8814.00 and that the value

of the remainder immediately before the taking was $24,600.00, and that in his opinion the value of the remainder after the taking was $21,000.00, for a total damage of $3,600.00. The total of the value of the part taken and the damages to the remainder, according to Mr. Smith's testimony was $12,414.00.

Appellee presented another expert value witness, Toland. Mr. Toland, a real estate appraiser, testified that he was employed by appellee to appraise appellants' property in question. He described the property and surrounding area and sales of properties in the area he deemed comparable and the prices for which they had sold. He further testified that in his opinion the part taken was of a value of $8814.00, that the value of the remainder before the taking was $35,720.00 and that the value of the remainder after the taking was $30,375.00, for a total damage to the remainder by reason of the taking of $5,345.00. According to Mr. Toland's value opinions the total compensation due for the taking and damages was $14,159.00.

Both Mr. Smith and Mr. Toland, appellee's expert witnesses, were fully and vigorously cross examined by appellants' attorneys. At the conclusion of Mr. Toland's testimony, appellee rested its case.

Appellants then produced the witness Richards, City Planner for the City of Mesquite, Texas. Mr. Richards told of his duties in his office and his professional and educational background. He testified that he makes recommendations on zoning changes in the City of Mesquite, that some of his recommendations have been turned down by the zoning board and also that some of the zoning board recommendations have failed to be approved by the City Council. He testified to the effect that a request for a zoning change on appellants' land from single residence to apartment zoning, as of April 6, 1964, would be a logical request. In response to a question by appellants' attorney: "What would be the—in your opinion, what would be the

logical outcome of any logical request for a zoning change?", he stated, "I can't say that I would actually have an opinion." Objections were sustained to appellants' efforts to secure other answers on the above matter. Mr. Richardson testified as to the factors he considers in making recommendations to the City on the question of change in zoning from residential to apartment zoning, and he testified with respect to other tracts on which he had recommended zoning changes which had been approved and to further factors about the subject property which would influence his recommendation to change the zoning to apartment zoning.

Appellants next presented their witness Hollin, President of Land Planning, Inc. and Mr. Hollin testified as to his professional and educational background, to his experience in appearing before the City and Planning Commission of the City of Mesquite, Texas, and to what he would consider in regard to a possible zoning change on the property in question. He further testified to the effect that if he was asked by the City for recommendations on a zoning change, he would recommend such change to multiple family complex which would include apartments and that based on his experiences, it would have a very good possibility of being approved by the City and that such approval would be very probable. Mr. Hollin also proved up a plan he had prepared to show the adaptability of appellants' property for apartment purposes and showing one possible plan of development for such purposes, which plan was admitted in evidence. He also explained how in his opinion the property could have been developed before the taking and how the taking would in effect destroy its adaptability for such purposes after the taking.

Appellants' next witness, Sherman, a real estate appraiser, testified with reference to the study he had made of appellants' property and to the factors he believed would lead to a highest and best use than for which the property was zoned and stated that in his opinion its highest and best use would be for apartments. Mr. Sherman testified to the effect that in his opinion the land taken would be worth $8,000.00 per acre, totalling $70,512.00, and related what he considered to be comparable sales, some of which were zoned commercial. In Mr. Sherman's opinion the value of the remainder before the taking was $174,580.00 and the value after the taking was $70,429.00. According to Mr. Sherman's opinion the total compensation due the appellants would be $174,663.00. Mr. Sherman's opinion was based upon the land being available for apartment uses.

Appellants next offered one of the landowners, Mr. Ray Hodges, as a witness. Mr. Hodges testified he was one of the owners of the property in question and was familiar with real estate values in Dallas County, Texas. In his opinion, the highest and best use of the property was for apartment purposes, and he gave his opinion of value on the part taken as $.50 per square foot, of the remainder before the taking of $.50 per square foot and he valued the remainder after the taking at $1,000.00 per acre. In his opinion, as the figures were calculated out, he valued the property taken at $174,240.00 and the damages to the remainder at $737,300.00, for a total compensation figure of $911,540.00.

Appellants next called as a witness Riggs, a builder and investor in real estate, who testified as to real estate developing he had done in the City of Mesquite. Mr. Riggs testified that the property in question would be suitable for apartments, would be the best use of said property, and its value as apartment land to be $3,000.00 per acre on the date of the taking, but if it were apartment zoned, he would value it at $10,000.00 per acre.

As hereinbefore related the jury answered Issue 1, $13,221.00, Issue 2, $53,580.00, and Issue No. 3, $45,981.00, which verdict resulted in a total compensation of $20,820.00. There was a very wide dif-

ference in appellants' values and appellee's values. The jury's verdict found values in between the values given by appellants and appellee but much nearer to the values testified to by appellee's witnesses than to the values testified to by appellants' witnesses.

Appellants present 8 points of error on appeal. By point 1 appellants contend to the effect that the trial court erred in failing to admit in evidence the testimony of appellants' witnesses Hollin, Sherman and Riggs as to whether there would be a probable zoning change as of April 6, 1964, the date of taking, involving appellants' tract within the reasonably foreseeable future from such date and as to what such change would be disregarding any consideration for a highway.

A short résumé of part of Mr. Hollin's testimony has been heretofore stated. Several objections to Mr. Hollin being asked to testify as to a probable zoning change were sustained by the court before he testified on this matter. These objections were to the effect that a proper predicate had not been laid to show him qualified to express such an opinion. However after further testimony appellee made no further objections to this line of testimony and Mr. Hollin gave his opinion to the effect that his recommendation on a zoning change of appellants' property to apartments would very probably be granted by the City of Mesquite.

The testimony of the witnesses Sherman and Riggs has also been carefully examined. The trial court was apparently of the view that the witnesses Sherman and Riggs had not related sufficient facts to show that they were qualified to express an opinion on reasonably probable changes in the zoning of appellants' property in the City of Mesquite, Texas, in the near future. The question of whether an expert is sufficiently qualified to express an opinion is a matter addressed to the sound discretion of the trial court. 23 Tex.Jur.2d 623, Sec. 417; State v. Evans, Tex.Civ.App., 340 S.W.2d 99, wr. ref., n. r. e. (1960).

Further, a clear abuse of that discretion must be shown before the trial court's action will be overturned. Foley Bros. Dry Goods Co. v. Settegast, Tex.Civ.App., 133 S.W.2d 228, writ refused (1939). We hold that this record does not show an abuse of discretion on the part of the trial court in excluding the matters complained of by appellants in their first point.

Furthermore, the trial court also submitted the definition of market value suggested by the Supreme Court of Texas in City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808 (1954). We find that appellants' point 1 does not present reversible error under the record in this cause and the same is overruled.

Appellants by point 2 contend to the effect that the trial court erred in failing to strike the testimony of appellee's expert witness Smith as to the damages caused by the condemnation because Smith stated on cross examination that from an appraisal standpoint he did not consider the spillway of landowners' lake as being within the taking. Mr. Smith duly qualified as a real estate appraisal expert, and having so qualified and having testified that he had an opinion as to market value of the property in question he became prima facie qualified to express his opinions on market value of landowners' property. His testimony became admissible and the question of what weight would be given to it was a matter to be determined by the jury, the trier of the facts in this case. The fact that his failure to include the taking of the spillway was one matter on which his appraisal was incorrect, however while this would tend to weaken his opinion on values in this respect, it would go to the weight of his testimony and would not be sufficient cause to strike his entire testimony. In this connection see State v. Jett, Tex.Civ. App., 358 S.W.2d 941, no writ. Furthermore, viewing the record as a whole, it is our view that appellants' point 2 does not present reversible error. Rule 434, Texas Rules of Civil Procedure. The testimony

of appellee's witness Toland allowed a value of $1,000.00 for the construction of a new spillway in the event the State destroyed the spillway. (There was also testimony in the record to the effect that a forty-foot square, flat bottomed ditch was to be installed as a part of the new construction to drain the overflow from the lake. Also this ditch is shown on appellants' Exhibit D-6.) However, since the findings of the jury on issues 2 and 3 resulted in a greater damage figure than testified by Mr. Toland, it is presumed that the jury compensated appellants for the total loss of their spillway. Appellants' point 2 is deemed as not presenting reversible error and is overruled.

Appellants contend to the effect that since a remainder tract of 3.181 acres and a remainder tract of 3.573 acres, became "landlocked" and without access, after the taking, that said tracts after the taking had a value of zero and appellants by their point 4 complain of the refusal of the trial court to instruct the jury to the effect that said tracts after the taking had no market value and they also contend by their point 3 to the effect that the trial court erred in failing to strike the testimony of appellee's expert witness Toland giving his opinion of the value of the parts of the remainder. In this connection, appellants contend to the effect that Toland admitted on cross-examination that the values of the parts of the remainders were based solely upon the attractiveness of such parts to an adjoining owner or owners.

The trial court correctly refused to grant appellants' requested instructions as all of the expert witnesses on both sides, as well as the landowner Hodges, testified that the remainder of the property had a market value, and they all gave their opinions on the same as hereinbefore set out. While the issue was sharply drawn as to the amount of damages, with all witnesses who testified on values having opinions thereon, there was no dispute in the evidence that there were some damages and the jury on sharply conflicting evidence before them found damages to the remainder after the taking.

Furthermore, it is well-settled law that opinion testimony does not establish any material fact as a matter of law. Hood v. Texas Indemnity Ins. Co., 146 Tex. 522, 209 S.W.2d 345 (1948). It follows therefore that the trial court correctly refused to grant appellants' requested instructions. Appellants' 4th point is overruled.

We further hold that the trial court did not err in striking the opinion testimony given by Mr. Toland, one of appellee's expert witnesses. Mr. Toland was shown to be fully qualified to testify to the market value of the property in question. When it was shown that he knew market value and was acquainted with the market value of the property, he was prima facie qualified to testify as an expert. His testimony became admissible as such and it then became a question of the weight to be given it by the jury. Mitchell v. Texas Electric Service Co., Tex.Civ.App., 299 S. W.2d 183, wr. ref., n. r. e. (1957).

Furthermore, the fact that the witness Toland in discussing the factors relevant to his forming of his opinion as to the value of the remainder considered the attractiveness of the land-locked portions of the remainder to adjoining owners, would not require the trial court to strike his opinion testimony as to his opinion of the value of the entire remainder nor even of the land-locked portions thereof. In this connection see State v. Rumery, Tex.Civ. App., 381 S.W.2d 87, wr. ref., n. r. e. (1964) and authorities therein cited. We quote from the opinion in State v. Rumery, supra, in part as follows:

" ' * * *

'Point of Error No. 2

'The trial court erred in admitting into evidence testimony as to what the value of the subject property would be when hypothetically combined or used with other property under separate ownership.

'Point of Error No. 3.

'The trial court erred in admitting into evidence testimony as to the value of the property being acquired by condemnation as commercial property when subject property was not commercial property on the date of taking herein.

' *   *   *.'

"Common prudence would cause a buyer in a private deal to be influenced in the price that he would pay for the subject strip by the prices other parties had paid for land in its vicinity having some elements of the strip's commercial potential. If the buyer knew of no sale of an exactly similar tract he would be influenced by sales of tracts containing an area in some part comparable to the strip, such as a tract facing Eleventh Street, the rear half of which was comparable in a high degree to the strip, and which rear half had comparable commercial or economic use. Knowledge of the arm length's market price of such other lots would influence the price he would willingly pay. Sales prices of such other tracts probably would not be controlling with such buyer, but would be one of several factors he would consider in determining the price he would pay. From the evidence it appears the appraiser used the prices paid in transactions he relied upon as one of several factors influencing his opinion of value.

"In the search for market value the information an appraiser might gain from sales here shown is worthy of note, though the tracts are dissimilar in very important respects. There are safeguards against these sales being accorded weight by the jury other than as a factor considered by the appraiser in arriving at his value conclusion. The court's instruction limiting the purpose for which the evidence is admitted and cross examination that emphasizes the negative aspects of comparability are the protective shields of the party resisting the impact of the ap-

praisers' testimony. See The State of Texas v. Oakley, 163 Tex. 463, 356 S.W. 2d 909 at 914, 95 A.L.R.2d 1207. The evidence was properly admitted. [City of] Houston v. Pillot, Tex.Com.App., 105 S.W.2d 870, op. adpt.; Hays v. State of Texas, Tex.Civ.App., 342 S.W.2d 167, N.R.E.; State v. Morse, Tex.Civ.App., 342 S.W.2d 165, N.R.E.; State v. Sides, Tex.Civ.App., 348 S.W.2d 446, N.R.E

"The conclusion stated makes it unnecessary to discuss each point of error in detail, and they are each overruled. The judgment of the trial court is affirmed." (Emphasis added.)

Appellant's 3rd point is overruled.

■ Appellants by their 6th point contend that the trial court erred in refusing to admit the testimony of the witness L. E. Clark, the State Right-of-Way Engineer, as to the approved value of the State of Texas on the date of the taking as an admission against interest.

We hold that the trial court correctly refused to permit appellants' witness L. E. Clarke to testify as to the approved value of the State of Texas as an admission against interest, inasmuch as the testimony showed that such approved value was set by agents and employees of the State of Texas based upon the appraisals of independent fee appraisers employed by the State of Texas, as such evidence sought from Clarke was clearly inadmissible.

The approved value which appellants sought to place in evidence was based on appraisals made by independent fee appraisers employed by the State to appraise the property in question. The office where Mr. Clarke was employed only recommends a value based on the facts contained in the appraisal reports it obtains. That value is approved by the Right-of-Way Division of the State Highway Department in Austin.

■ The appraisal reports upon which the approved value was based were immune from discovery under Rules 167 and 186a,

T.R.C.P., Shirley v. Dalby, 384 S.W.2d 362, Tex.Civ.App., wr. ref., n. r. e. (1964). Not being able to secure the appraisal reports directly under Shirley v. Dalby, supra, it follows that the results of and recommendations on said reports could not be secured in the manner attempted by appellants. Appellants' 6th point is overruled.

Appellants' 5th, 7th and 8th points are deemed as not presenting reversible error under the record in this cause and are overruled.

Finding no reversible error in the record, the judgment of the trial court is affirmed.