The **HOUSING AUTHORITY OF THE CITY OF EL PASO**, Appellant,

v.

George **GUERRA**, Appellee.

No. 08–96–00112–CV.

Court of Appeals of Texas,
El Paso.

Feb. 26, 1998.

Rehearing Overruled March 25, 1998.

---

2. TEX. CONST. art. I, § 16.

3. *Id.*

4. TEX. CONST. art. I, § 19.

5. TEX. CONST. art. I, § 20.

Michael C. Crowley, El Paso, for Appellant.

E. K. Peticolas, Peticolas, Shapleigh & Brandys, El Paso, for Appellee.

## OPINION

LARSEN, Justice.

Appellee George Guerra's motion for rehearing is granted, our opinion of June 12,

1997 is withdrawn, and this opinion is substituted.

The Housing Authority of El Paso appeals from a judgment in favor of George Guerra in his suit for wrongful discharge in violation of the Texas Workers' Compensation Act. A jury awarded Guerra $66,000 in actual damages. We affirm.

### FACTS

George Guerra was hired by the Housing Authority in 1989 as a carpenter in the Comprehensive Improvement Assistance Program. The length of his employment was for the duration of a particular modernization project, although Guerra understood that the job was not temporary and, because he was a good worker, he would be retained when the initial project was complete. He was told by his supervisor, Mr. Jose Robles, that he was "going to get a raise, and ... be moved into central," that is, to a permanent position.

On November 9, 1990, Guerra was working at the Kennedy Housing Complex in El Paso's lower valley, removing doors from their hinges for refinishing and painting. A painter was also working in the area with a hose. Guerra tripped over the hose and fell to his knees while carrying a door, injuring himself. He reported the injury to his supervisor, Jose Robles, who (according to Guerra) responded by telling him "might as well leave your tools there, cause you're just— your job has just ended. Anybody—anybody in worker's compensation is cut out from the job." Robles denied making such a statement. Guerra was unable to work for some months, and was released by his doctor for light duty on June 4, 1991.

During the time that Guerra was off work, the remodeling job he had been initially hired for was completed and the number of workers reduced from 100 in 1990 to 25 or 30 in 1991. The number of carpenters was reduced substantially. In a letter of July 17, 1991, Guerra was told that no maintenance positions were open that could accommodate his physical limitations. Robles testified that Guerra was a temporary worker and was offered no further work once the Kennedy Complex project was completed.

Guerra testified that he believed he was terminated because he had filed a workers' compensation claim and that was the reason he was never offered another job with the Housing Authority. He testified he "felt threatened" when he told Robles he had suffered an injury. Robles, on the other hand, testified that he had never told Guerra he would lose his job, and that he did not participate in the decision to terminate Guerra's employment, nor did he have the authority to hire or fire Housing Authority employees. Robles' testimony was inconsistent as to whether he had found fault with the way Guerra had reported his injury. At trial, Robles testified he had no complaint with how or when Guerra had reported. A reprimand dated November 30, 1990, however, stated that Guerra was being reprimanded for "failure to report and see doctor immediately." The reprimand was signed by Robles. He could not explain the discrepancy.

A jury found that Guerra had been discharged in violation of the Texas Worker's Compensation Act, and that he had been damaged in the amount of $66,000. The Housing Authority appeals.

### EVIDENCE ON LIABILITY

Appellant attacks the trial court's decision with five points of error. Point of Error Five states that the trial court erred by rendering judgment in favor of Guerra because there was no evidence of causation to support a finding of liability. We address this point first.

■ In considering a "no evidence" or legal insufficiency point, we consider only the evidence that tends to support the jury's findings and disregard all evidence and inferences to the contrary.[1] If there is more than a scintilla of evidence to support the questioned finding, the "no evidence" point fails.[2]

1. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); *Texas Tech Univ. Health Sciences Ctr. v. Apodaca*, 876 S.W.2d 402, 411 (Tex.App.—El Paso 1994, writ denied).

2. *Tseo v. Midland Am. Bank*, 893 S.W.2d 23, 25 (Tex.App.—El Paso 1994, writ denied); *Hallmark v. Hand*, 885 S.W.2d 471, 474 (Tex.App.—El Paso 1994, writ denied).

Upon reviewing the record, we find that there is more than a scintilla of evidence to show liability.

Appellee's original petition alleges that he was discharged in violation of the Texas Worker's Compensation Act. Specifically, Section 451.001 states:

A person may not discharge or in any other manner discriminate against an employee because the employee has:

(1) filed a workers' compensation claim in good faith;

(2) hired a lawyer to represent the employee in a claim;

(3) instituted or caused to be instituted in good faith a proceeding under Subtitle A [footnote omitted]; or

(4) testified or is about to testify in a proceeding under Subtitle A.[3]

The Legislature's purpose in enacting this law was to protect people who are entitled to benefits under the workers' compensation law and to prevent employers from firing them for taking steps to collect benefits.[4] It is not necessary for a worker to have actually filed a workers' compensation claim to invoke the statutory protection; the worker need only take steps toward instituting a compensation proceeding to be protected. "Informing one's employer of an on-the-job injury sufficiently 'institutes' a compensation proceeding within the meaning of the law."[5]

To prevail on a claim of wrongful termination, an employee must establish a causal link between his discharge and the filing of a workers' compensation claim.[6] It is unnecessary to show that the workers' compensation claim was the sole cause of his termination; the employee need only show a causal connection between the discharge and the claim for benefits.[7] An employee's subjective belief alone is not enough to support the causal connection required for a workers' compensation retaliation cause of action.[8] Once the employee has established the causal link, the burden then shifts to the employer to show that the employee was discharged for a legitimate reason.[9]

The question before us is whether sufficient evidence supports a recovery for appellee's wrongful discharge. The evidence is sufficient if appellee's workers' compensation claim contributed to appellant's decision to terminate him.[10] Thus, there must be evidence of a causal link between the termination of employment and the filing of a workers' compensation claim.[11]

We find there is more than a scintilla of evidence establishing that appellee was wrongfully discharged from his employment with appellant. Appellee was discharged after giving appellant notice of his injury. Plaintiff Guerra testified that after he informed Jose Robles, his supervisor, that he had been injured, Robles told him that he might as well leave his tools, that his job just ended, because anybody in workers' compen-

3. Tex. Lab.Code Ann. § 451.001 (Vernon 1996).

4. *Stephens v. Delhi Gas Pipeline Corp.*, 924 S.W.2d 765, 771 (Tex.App.—Texarkana 1996, writ denied) (citing *Carnation Co. v. Borner*, 610 S.W.2d 450, 453 (Tex.1980)).

5. *Id.* at 772 (citing *Palmer v. Miller Brewing Co.*, 852 S.W.2d 57, 61 (Tex.App.—Fort Worth 1993, writ denied)).

6. *Trevino v. Corrections Corp. of America*, 850 S.W.2d 806, 808 (Tex.App.—El Paso 1993, writ denied); *Investment Properties Management, Inc. v. De Montes*, 821 S.W.2d 691, 694 (Tex.App.—El Paso 1991, no writ); *Hughes Tool Co. v. Richards*, 624 S.W.2d 598, 599 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.), *cert. denied*, 456 U.S. 991, 102 S.Ct. 2272, 73 L.Ed.2d 1286 (1982).

7. *Trevino*, 850 S.W.2d at 808; *Investment Properties*, 821 S.W.2d at 694; *Azar Nut Co. v. Caille*, 720 S.W.2d 685, 687 (Tex.App.—El Paso 1986), *aff'd*, 734 S.W.2d 667 (Tex.1987).

8. *Continental Coffee Products Co. v. Cazarez*, 903 S.W.2d 70, 79 (Tex.App.—Houston [14th Dist.] 1995), *aff'd in part and rev'd in part*, 937 S.W.2d 444 (Tex.1996).

9. *Trevino*, 850 S.W.2d at 808; *Hughes*, 624 S.W.2d at 599.

10. *See Worsham Steel Co. v. Arias*, 831 S.W.2d 81, 84 (Tex.App.—El Paso 1992, no writ); *Paragon Hotel Corp. v. Ramirez*, 783 S.W.2d 654, 658 (Tex.App.—El Paso 1989, writ denied).

11. *Worsham*, 831 S.W.2d at 84; *Paragon*, 783 S.W.2d at 658.

sation is cut out from the job. This testimony presents more than Guerra's subjective belief that he was fired because of his compensation claim; rather, this was testimony of a direct statement made by Robles that the jury was free to believe or disbelieve. The jury also heard from Robles, who denied making the statement, testifying rather that he only told appellee to fill out paperwork and then instructed him to go to the hospital. Robles testified at trial that he had no problem with the manner or timeliness of Guerra's report of injury, but Robles could not explain the reprimand which he had signed, documenting Guerra's "failure to report and see doctor immediately." The jury could consider this inconsistency when assessing Robles' credibility.

Moreover, Housing Authority personnel gave conflicting testimony on the reason for Guerra's termination. The Authority's letter of termination to Guerra, dated July 17, 1991, and signed by Marsha Jordan, Human Resources Manager, stated that "[y]our physical limitations prevent you from performing any job in the maintenance trades.... Your employment with the Housing Authority is terminated immediately, based upon your medical inability to perform your duties, and the Housing Authority's inability to provide you with suitable employment through 'reasonable accommodation.'" In contrast, Laurie Dawson, Director of Human Resources at the Housing Authority, testified that Guerra was released from employment solely because the temporary program at Kennedy Complex had ended. The jury was allowed to weigh all of the evidence and could determine the credibility of the witnesses' testimony before them.

In reviewing the record and the facts set forth above, we find that there is more than a scintilla of evidence to support the submission of jury question number two and to support a finding of liability. We overrule appellant's Point of Error Five.

### *EVIDENCE ON DAMAGES*

█ Point of Error One urges that the trial court erred in submitting jury question number two, assessing damages, because no evidence supported the submission. In Point of Error Two, the Housing Authority urges that there was no evidence, or insufficient evidence, to support a damage award for Mr. Guerra's termination. The jury charge contained a broad-form damage question. Question two read:

> What sum of money, if any, do you find from the preponderance of the evidence, if paid now in cash, would be the reasonable damages suffered by the Plaintiff as a result of being discharged by the Defendant?
>
> In answering this question you may not consider loss of earning capacity, loss of income, physical pain, impairment or mental anguish that resulted from his "on the job injury" or loss of income, if any, after this date.
>
> Answer in dollars and cents or "none."

WE ANSWER: 66,000

We note as a preliminary matter that this question contained no guidance on what elements the jury should have considered in arriving at an amount payable as actual damages. No objection was made to this glaring omission, nor is complaint made on appeal on this ground. The jury was left without instruction as to what elements it should consider in arriving at "reasonable damages suffered by the Plaintiff," although it was told not to consider certain damage arising from his injury. Although we can speculate that the jury might have inferred, because it was instructed *not* to consider certain elements of damage stemming from Guerra's on-the-job injury, that it *should* consider those same elements stemming from his termination, this is only surmise. The jury was never instructed to consider the elements of loss of earning capacity, loss of income, physical pain, impairment, or mental anguish stemming from the termination. Nevertheless, neither party objected to the question as submitted, nor is any complaint raised on appeal as to the form of this question. Because the Housing Authority made no objection, any complaint as to the measure of damages used by the jury is waived.[12]

12. *Harville v. Siebenlist*, 609 S.W.2d 315, 317 (Tex.Civ.App.—Amarillo 1980, no writ); *Cooper*

When a damage question is submitted in broad form, with all damage elements combined in a single sum, so long as the aggregate evidence for all elements of damage supports the award, we must uphold the jury's verdict.[13] Thus, if the total of all damage evidence, including but not limited to loss of earning capacity, loss of income, physical pain, impairment, and mental anguish equals at least $66,000, we should overrule the point of error.

First, we find that the jury could have simply calculated past lost wages and awarded that to Guerra, without considering any other element of damage. Guerra testified that he made $6.84 at the Housing Authority, that he had been promised a permanent position, and that he was working full time. He was injured on November 9, 1990, and trial in this case took place November 28–29, 1995. Guerra also testified that he earned approximately $5,000 in the years between his injury and trial. A quick calculation of lost wages, without taking into consideration any raises, the value of any benefits Guerra would have earned as a permanent employee, or overtime, comes to almost exactly the amount awarded by the jury:

| | | |
|---|---|---|
| $6.84 per hour | $273.60 per week | $14,227.20 per year |
| 40 hours per week | 52 weeks per year | 5 years |
| $273.60 per week | $14,227.20 | $71,136.00 total |

$71,136.00 total
 5,000.00 mitigation
$66,136.00 past lost wages at 1989 hire rate

The jury could have reasonably concluded that Guerra's inability to find full-time work, and thus the loss of earnings, was attributable to his wrongful discharge. Guerra testified that the Housing Authority never counseled him about reasonable accommodation of his physical limitations, that he was never apprised of openings within the Housing Authority for jobs which he could have performed, such as security guard (for which there was at least one opening during the relevant time period), and that he was not hired for any job where the application process contained inquiry into his reason for leaving the Housing Authority. We believe that the evidence on earning capacity in this case meets the degree of certainty which insures the jury was not left to merely conjecture as to his damages.[14]

The mental processes by which a jury determines the amount of damage is not ordinarily something the appellate court is privy to, and we therefore must allow the jury discretion in determining damages if the amount is within that ambit which will reasonably compensate plaintiff for the wrong.[15] Without reaching the issue of mental anguish or future damages, we believe that the evidence before the jury was sufficient to support the verdict it entered here.[16] Points of Error One and Two are overruled.

### JURY INSTRUCTIONS

In its third and fourth points of error, the Housing Authority urges that it was error for the trial court to refuse to submit the Authority's requested jury instructions on causation, effect of a non-discriminatory policy, and effect of other instances of termination. We will address the complaints in that order.

We review a trial court's refusal to submit jury instructions under an abuse of discretion standard.[17] A trial court abuses

v. *Kruse–Reed*, 554 S.W.2d 45, 48 (Tex.Civ.App.—Amarillo 1977, no writ).

**13.** *Haryanto v. Saeed*, 860 S.W.2d 913, 922 (Tex. App.—Houston [14th Dist.] 1993, writ denied).

**14.** *See Saenz v. Fidelity & Guaranty Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex.1996); *Bonney v. San Antonio Transit Co.*, 160 Tex. 11, 325 S.W.2d 117, 121 (Tex.1959).

**15.** *Saenz*, 925 S.W.2d at 614; *Prati v. New Prime, Inc.*, 949 S.W.2d 552, 555 (Tex.App.—Amarillo 1997, writ requested).

**16.** *Bonney*, 325 S.W.2d at 121.

**17.** *Thomas v. Oldham*, 895 S.W.2d 352, 360 (Tex. 1995); *Depriter v. Tom Thumb Stores*, 931 S.W.2d 627, 628 (Tex.App.—Dallas 1996, writ denied).

its discretion when its action is arbitrary or unreasonable.[18] A trial court also abuses it discretion when it acts without reference to guiding rules or principles.[19]

The trial court gave the following instruction on causation:

Texas Workers' Compensation Law provides in pertinent part as follows: ... no person may discharge or in any other manner discriminate against any employee because the employee has in good faith filed a claim, hired a lawyer to represent him in a claim, instituted, or caused to be instituted, in good faith, any proceeding under the Texas Workers' Compensation Act, or has testified or is about to testify in any such proceeding....

It is not necessary that the employee show the sole cause or only cause of his discharge was his action in filing a workers' compensation claim or taking other action to institute a worker's compensation proceeding. Instead, the employee must show only that his action in filing a claim or taking other actions to institute a worker's compensation proceeding was a reason for his firing, even if other reasons for his firing existed.

The Housing Authority's requested instruction read:

In order to prevail on this retaliation claim, plaintiff has the burden of establishing a causal link between the discharge and the employee's workers' compensation protected activity. [Citation omitted]. A subjective belief by Plaintiff of such a causal link is insufficient to state a claim. [Citation omitted]. Once the link has been established, the employer must rebut the alleged discrimination by showing there were legitimate, non-discriminatory reasons behind the discharge. [Citation omitted]. If the employer sets forth legitimate

business reasons for the discharge, then the plaintiff must show that the employer's explanation is merely a pretext. [Citation omitted]. In analyzing the legitimate, non-retaliatory reasons offered by Defendant for its decision, you must decide whether Plaintiff has proven that he was intentionally retaliated against for engaging in employee's workers' compensation protected activity. [Citation omitted].

This case was tried before the Supreme Court's decision in *Continental Coffee Products Co. v. Cazarez*,[20] which articulated the proper jury instruction on causation, which this court has formulated as:

In order to succeed on a claimed violation of Section 451, the employee must show that the termination or other discrimination would not have occurred when it did but for the employee's assertion of a compensation claim.[21]

Nevertheless, the trial court's instruction that the retaliatory motivation "was a reason" for the firing is sufficiently similar to the "but for" language now prescribed by the Supreme Court to properly apprise the jury of the correct causation standard.[22] Moreover, the trial court's instruction followed the well-established rule that where statutory violations are the basis of jury questions, the questions should be submitted in terms as close as possible to the language of the statute.[23] The trial court's instruction, after reciting the law found in the statute, properly went on to address the causation standard developed in case law.[24] Although the Housing Authority's requested instruction may have been a correct statement of the law, we find that it was not required for the jury to answer the controlling question, which tracked the statute.[25] We conclude there was no abuse of discretion in refusing to

**18.** *Depriter,* 931 S.W.2d at 628.

**19.** *Id.*

**20.** 937 S.W.2d 444, 451 (Tex.1996).

**21.** *Burlington Coat Factory Warehouse of El Paso, Inc. v. Flores,* 951 S.W.2d 542, 544 (Tex.App.—El Paso 1997, no writ) (citing *Continental Coffee,* 937 S.W.2d at 450, 451).

**22.** *Continental Coffee,* 937 S.W.2d at 450.

**23.** *Spencer v. Eagle Star Ins. Co.,* 876 S.W.2d 154, 157 (Tex.1994).

**24.** *Hogue v. Blue Bell Creameries,* 922 S.W.2d 566, 571 (Tex.App.—Texarkana), *denied with per curiam opinion,* 930 S.W.2d 88 (Tex.1996).

**25.** *Depriter,* 931 S.W.2d at 630.

submit the Housing Authority's instruction as submitted.

 The Housing Authority requested the following instruction on "effect of a non-discriminatory policy:"

> You are instructed that the uniform application of a non-discriminatory policy does not violate Texas Labor Code § 451.001, even when the policy's application negatively affects an employee who has made a claim for worker's compensation benefits. [Citations omitted].

The Housing Authority requested this instruction on "effect of other instances:"

> You are instructed that the only case you are to consider is that of Plaintiff's. Evidence that other employees were released from employment by Defendant should be considered only for the question of whether a causal link, if any, existed between Plaintiff's release from work and his participation in a protected activity. If the other employees released from employment were released due to the uniform application of a non-discriminatory policy, the Defendant has not violated § 451.001 with respect to the other releases even if the other employees were negatively affected. *See Durbin v. Dal–Briar Corp.*, 871 S.W.2d 263, 270 (Tex.App.—El Paso 1994, writ denied).

Again, we conclude that the Housing Authority's requested instructions were not necessary to enable the jury to perform its duty in rendering a verdict.[26] Points of Error Three and Four are overruled.

### CONCLUSION

The judgment of the trial court is affirmed.

---

**26.** Tex.R. Civ. P. 277; *Depriter,* 931 S.W.2d at 630.