COURT OF
APPEALS

                                                    EIGHTH DISTRICT
OF TEXAS

                                                               EL
PASO, TEXAS

 

SCM MANAGEMENT, INC./MANUELA          )

ORTIZ,                                                                 )

                                                                              )            No.  08-00-00114-CV

Appellant/Cross-Appellant,            )

                                                                              )                 Appeal from the

v.                                                                           )

                                                                              )              
210th District Court

MANUELA ORTIZ/SCM
MANAGEMENT,       )

INC.,                                                                     )          
of El Paso County, Texas

                                                                              )

Appellee/Cross-Appellee.              )                
(TC# 98-4005)

                                                                              )

 

O
P I N I O N

 

Appellant/Cross-Appellee SCM Management, Inc. (ASCM@) appeals from the final judgment for Appellee/Cross-Appellant Manuela Ortiz (AOrtiz@).  Ortiz cross-appeals the
trial court=s
modification of the final judgment. 
SCM raises five issues:

(1)        Evidence is legally and factually
insufficient to find SCM violated Texas Worker=s
Compensation Act when Ortiz was discharged;

(2)        the evidence is
legally and factually insufficient to support the jury=s
award of damages for past and future lost wages;

(3)        Ortiz=s
failure to mitigate her damages prevent her recovery of
damages for lost wages;

(4)        the evidence is
legally and factually insufficient to support the jury=s
award of damages for past mental anguish; and








(5)        the evidence is
legally and factually insufficient to support the jury=s
award of exemplary damages.

 

Ortiz raises one cross-issue: 

(1)        The trial court erred in granting SCM=s motion for judgment notwithstanding
the verdict and failing to award exemplary damages.

 

We affirm.

After Ortiz was
discharged from SCM on January 13, 1998, she filed a discrimination complaint
against SCM on February 3, 1998 and a worker=s
compensation claim around April 1998. 
Ortiz filed suit against SCM on November 20, 1998 for wrongful discharge
in violation of Texas Worker=s
Compensation Act (AAct@). 
Ortiz specifically alleged in her petition that Fawn Shirley, her
supervisor, terminated her in retaliation for intending to file a worker=s compensation claim.  Ortiz asserted she had notified Shirley that
she had suffered an injury on the job and intended to file a claim for worker=s compensation.

Finding that SCM
discharged Ortiz in violation of the Act and that it was done willfully and
maliciously, the jury assessed damages at:

$25,000           Past lost
wages and benefits

$112,500         Future lost wages and benefits

$25,000           Mental
anguish

$200,000         Exemplary damages

 

SCM filed a motion for judgment
notwithstanding the verdict, which the trial court granted in part.  In the final judgment, the trial court
excluded the exemplary damages because no evidence supported the finding and
awarded Ortiz $162,500 in actual damages plus court costs.

 








SUMMARY
OF THE EVIDENCE

Vivian Fawn
Shirley, residential vice president of SCM, testified that SCM was based in
San Antonio, Texas and owned two apartment complexes in El Paso:  High Ridge and Chimneys.  Shirley had been with SCM since September 1,
1987, and she had the authority to hire and discharge employees as the top
representative of SCM in El Paso.  As a
part of her compensation, Shirley resided at High Ridge without rent.

SCM hired Ortiz on
March 18, 1985 as a housekeeper, which duties involved manual labor and
chemicals to clean and disinfect the apartments, offices, bathrooms, units, and
other facilities.  Ortiz noticed around
September 1997 that her hands, already deformed when she began working for SCM,
began to cause her greater problems. 
Ortiz=s
husband, Rudy, confirmed that she began complaining about her hands in the fall
of 1997 and that he could not hold her hand. 
Ortiz attributed the cause of the injury to the cleaning chemicals,
which got on her skin in spite of the rubber gloves she wore during cleaning.








Most people
employed at High Ridge were aware Ortiz had problems with her hands.  Also, sometime after August 1997, Ortiz=s co-workers were looking at her hands,
and they told her she could do nothing about them.[1]  Although Shirley denied Ortiz or anyone
informed her that Ortiz=s
hands were causing her increasing problems in 1997, Shirley said she had always
been aware of Ortiz=s
condition for as long as she had known Ortiz. 
Sandra Dominguez, manager of High Ridge from August 1997 to January
1998, disagreed with Shirley=s
disclaimer.  Dominguez and the
maintenance supervisor, Rosalio Moya,
had noticed Ortiz=s hands
were getting worse, and Dominguez informed Shirley of the fact, because she
thought Ortiz needed medical treatment. 
Ortiz also said Shirley definitely knew about her hands, because Shirley
mentioned it when she went to Shirley=s
apartment some time in the summer of 1997 about a delayed paycheck.  At that time, Shirley exclaimed that Ortiz=s fingers were Areally
bad@ then stated the only thing Ortiz could
do was to just quit.  Ortiz had reported
the condition to Moya, who denied receiving a
complaint from Ortiz.

SCM=s employee handbook mentioned it had
worker=s
compensation insurance and, without further elaboration, only directed the
employee to report it to a supervisor. 
Shirley admitted that employees might not know about worker=s compensation but that she was
familiar with the filing process and had filed claims for several SCM
employees, including herself.  SCM kept track of employees who filed for
worker=s
compensation, which included Michael Caro, Rosalio Moya, and Leonor Estrada.  Caro had filed five claims from 1990 to 1994.  Rosalio Moya, a current SCM employee, had also filed five claims,
variously for a cat-bite and getting hit on the head.  Leonor Estrada
filed three claims, the second of which was for a knee injury.  Dominguez said she saw Estrada running after
a child and walking normally but then Estrada began limping when she came into
the office while on compensation. 
Shirley wanted Dominguez to document the incident and also plan on
secretly videotaping Estrada.








Aggravated by Caro and Estrada taking advantage of the worker=s compensation system, Shirley
expressed to Dominguez her determination to not let anyone else do the
same.  Dominguez testified that Shirley
feared Estrada was coaching Ortiz on how to file a worker=s claim, just as Caro
had done for Estrada, and that Ortiz would be the next to file a claim.  Therefore, Shirley instructed Dominguez and Moya to fire Ortiz before she could file.  From that time, Moya
began to scrutinize Ortiz=s
work, harassing and picking on her. 
Dominguez however disagreed with Shirley, because she thought Ortiz was
a good worker who was always on time and faithfully performed her duties.

Shirley denied
deciding to or actually having terminated Ortiz=s
employment with SCM on January 13, 1998. 
Instead, she said she enforced Dominguez=s
and Moya=s
decision, based on Ortiz=s
poor performance at work.  Moya said Shirley did not tell him to warn Ortiz or fire
her; instead, it was his and Dominguez=s
decision.  In 1997, Ortiz received two
written reprimands for improper job performances:  one from Moya on
July 30, 1997 and a Alast
chance@ warning
on December 16, 1997, signed by Dominguez.[2]  Moya said he
noticed Ortiz=s work
began to be sloppy in 1997 and he gave her several verbal warnings.  The apartments that Ortiz had cleaned were
left dirty, and her co-workers and tenants were complaining.  After the verbal warnings, Moya sent Ortiz to retrain at Chimneys with Consuelo
Marquez, a housekeeper at Chimneys. 
However, Nora Rivas, manager of Chimneys, complained that Ortiz
improperly performed by not leaving windows or kitchens clean and failing to
dust behind a refrigerator.  Victor
Hernandez, assistant maintenance supervisor at High Ridge, said Ortiz=s work performance kept on decreasing
in quality over the years until he had to reprimand her.  She would use the kitchen sink or the toilet
as a bucket and use the same mop for the bathroom and kitchen floors.  Marquez said she saw Ortiz making several
mistakes while she was being retrained. 
She found problems with the bathroom, toilet, refrigerators, kitchen
sink, and windows on the doors that Ortiz had cleaned and had to redo them.








SCM=s employee handbook provided for yearly
performance evaluations, but Ortiz only had two performance evaluations during
her employment with SCM, which are undated. 
The performance evaluations did not indicate her job performance was
unacceptable, which was a ground for termination.  Ortiz also received two written warnings on
her job performance, one in 1993 and another in 1994, which was addressed to
both Ortiz and another housekeeper. 
Nothing else in the record indicates she was performing poorly at work
before 1997.

On January 13,
1998, Ortiz was working as usual when Moya told her
to go to the office.  Ortiz first saw
Dominguez, who said that Shirley wanted to fire her.  Since Shirley was not yet in the office,
Ortiz waited to talk to her.  When she
came, Shirley merely asked Ortiz what she had to say and stated everything was
set already, so Ortiz should drop the keys and hit the road.  Dominguez corroborated Ortiz=s testimony, although Shirley, Moya, and Rivas all testified that Shirley merely asked
Ortiz what she could do and also told Ortiz that she would reverse the others= decision if Ortiz would give her a
reason.

Other SCM
employees filed for worker=s
compensation and remained employed at SCM. Moya
himself had filed about five claims. 
Hernandez filed for worker=s
compensation on February 9, 1998 and received benefits.  He was not treated badly by anyone working
for SCM and was still employed there. 
Marquez also said she had filed for worker=s
compensation and had actually been absent from work while Ortiz was being
retrained in 1997.  No one expressed a
negative attitude, thereatened, or told Marquez she
could not file a claim.  She was still
working for Chimneys as a housekeeper.

 








DISCUSSION

Standard
of Review:  Legal and Factual Sufficiency
of the Evidence

When reviewing a
legal sufficiency challenge, we consider only the evidence and inferences, when
viewed in their most favorable light, that tend to support
the jury=s
finding, and disregard all evidence and inferences to the contrary.  Davis v. City of San
Antonio, 752 S.W.2d 518, 522 (Tex. 1988); Stafford v. Stafford, 726
S.W.2d 14, 16 (Tex. 1987).  If
such evidence amounts to more than a mere scintilla, or more than a basis for
mere surmise or suspicion, then the legal sufficiency challenge fails.  America West Airlines,
Inc. v. Tope, 935 S.W.2d 908, 912 (Tex.App.--El
Paso 1996, no writ).

When addressing a
challenge to the factual sufficiency of the evidence, the reviewing court looks
at all the evidence to determine whether the finding is so against the great
weight and preponderance of the evidence as to be manifestly unjust.  In re King=s Estate, 244 S.W.2d 660, 661 (Tex. 1951).  We do not substitute our judgment for that of
the jury=s and
will sustain the jury=s
findings if any probative evidence supports the finding.  Galveston Co. Fair &
Rodeo, Inc. v. Kauffman, 910 S.W.2d 129, 135 (Tex.App.--El
Paso 1995, writ denied).  It is
not our province to interfere with the jury=s
resolution of the conflicts in the evidence or to weigh the credibility of the
witnesses and their testimony.  Reynolds v. Kessler, 669 S.W.2d 801, 807 (Tex.App.--El Paso 1984, no writ).  Generally, a jury=s
resolution of the conflicts in the evidence is conclusive.  Clark v. Nat=l Life & Accident Ins. Co., 200
S.W.2d 820, 822 (Tex. 1947).

Violation
of the Act








SCM first
challenges the evidence was legally and factually insufficient to find
retaliatory discharge, because:  (1)
Shirley did not know Ortiz had a work-related injury or a worker=s compensation claim; (2) SCM did not
have a negative attitude toward Ortiz=s
injury when she was allowed to work for SCM for nine years; and (3) Ortiz was
discharged for poor work performance. 

Texas Labor Code
Section 451.001 prevents an employer from discharging or discriminating against
an employee for:  (1) filing a worker=s compensation claim in good faith; (2)
hiring a lawyer to represent the employee in a claim; (3) instituting or
causing to be instituted in good faith a proceeding under Texas Labor Code ' 401.001 et seq.; or (4)
testifying in a proceeding under Texas Labor Code '
401.001 et seq.  Tex.Lab.Code Ann. ' 451.001 (Vernon 1996).  The purpose of the Act is to protect people
entitled to receive benefits and to prevent employers from firing them for
taking steps to collect the benefits.  Housing
Auth. of the City of El Paso v. Guerra, 963 S.W.2d 946, 950 (Tex.App.--El Paso 1998, pet. denied).  The employee need not have actually filed a
worker=s
compensation claim to invoke the statutory protection.  Guerra, 963 S.W.2d
at 950.  Taking steps to institute
a compensation proceeding is sufficient. 
Id.  A>Informing
one=s employer of an on‑the‑job
injury sufficiently Ainstitutes@ a compensation proceeding within the
meaning of the law.=@ 
Id., quoting Stephens v. Delhi Gas Pipeline
Corp., 924 S.W.2d 765, 772 (Tex.App.--Texarkana
1996, writ denied).








An employee
claiming wrongful termination must establish there was a causal link between
the discharge and the filing of worker=s
compensation claim.  Trevino
v. Correctins Corp. of Am., 850 S.W.2d 806, 808 (Tex.App.--El Paso 1993, writ denied).  Although the filing of the claim need not be
the sole cause of the discharge, the employee=s
subjective belief alone will not establish the causal link.  Guerra, 963 S.W.2d
at 950.  Once the employee
establishes the causal link, by either direct or circumstantial evidence, the
burden shifts to the employer to show the employee was discharged for a
legitimate reason.  Guerra,
963 S.W.2d at 950; Heinsohn v. Trans-Con
Adjustment Bureau, 939 S.W.2d 793, 794 (Tex.App.--Fort
Worth 1997, writ denied).  If an
employer knows an employee is injured, the employer may not frustrate the
purposes of the worker=s
compensation law by discharging the employee before the claim can be
filed.  Heinsohn, 939 S.W.2d at 795;
Mid-South Bottling Co. v. Cigainero, 799
S.W.2d 385, 389 (Tex.App.--Texarkana 1990, writ
denied).  This Court has held that
evidence is sufficient once it is shown that the worker=s
compensation claim contributed to the employer=s
decision to discharge the employee.  Guerra,
963 S.W.2d at 950.








It is undisputed
that Ortiz told no one she intended to file a worker=s compensation claim and that
she had always worked with her deformed hands. 
Ortiz however testified that the pain in her hands increased in 1997,
and she talked about it to co-workers some time around or after August 1997,
when Dominguez began working for SCM. 
Shirley was aware Ortiz had problems with her hands but disclaimed
knowing the pain in Ortiz=s
hands were increasing.  Ortiz however
said that Shirley noted her hands were Areally
bad@ in the summer of 1997 and recommended
that Ortiz quit.  Ortiz claimed she
reported the problem to Moya, and Dominguez said she
and Moya had noticed it as well.  Although Moya
denied Ortiz ever notified him of her hands, Dominguez said she told Shirley about
Ortiz=s
condition.  Dominguez further testified
that Shirley was disturbed by other employees taking advantage of the worker=s compensation benefits and instructed
Dominguez and Moya to discharge Ortiz before she
could file a claim.  Shirley and Moya denied Shirley had ever issued such order and asserted
Ortiz was fired for poor work performance. 
Moya, Rivas, Hernandez, and Marquez all said
they found apartments dirty after Ortiz cleaned them and that she would use
improper cleaning procedure.  Moya, Hernandez, and Marquez had all filed worker=s compensation claims and had never
received negative treatment from SCM.

The evidence is
both legally and factually sufficient. 
The jury was free to believe Ortiz=s
testimony that she suffered a work-related injury when the pain in her hands
started to increase from the chemicals she was using while employed by SCM.[3]  The condition of Ortiz=s
hands was generally known, and there is evidence that Shirley, SCM=s top representative in El Paso, was
aware that the condition was worsening, in spite of her testimony to the
contrary.  Although the testimony of
Dominguez, Shirley, and Moya directly conflicted on
SCM=s reason for discharging Ortiz, it was
for the jury to resolve the conflicting testimony among Shirley, Moya, Ortiz, and Dominguez, and the verdict indicates they
chose to resolve it in Ortiz=s
favor, giving more credence to Dominguez=s
testimony that Shirley wanted to discharge Ortiz before she could file for
worker=s
compensation.  A jury could have
reasonably concluded from the evidence there was a violation of the Act.  The jury=s
verdict is also not so against the preponderance of the evidence to make it
manifestly unjust.  We overrule SCM=s first issue.

 








Damages
for Past and Future Lost Wages 

Issue Two has been
waived, because it was not properly briefed. 
Rule 38.1(h) states that an appellant=s
brief must contain a clear and concise argument for the contentions made, with
appropriate citations to authorities and to the record.  Tex.R.App.P. 38.1(h); Leyva v. Leyva, 960
S.W.2d 732, 734 (Tex.App.--El Paso 1997, no writ).  We overrule Issue Two.

In Issue Three,
SCM contends that Ortiz=s
failure to mitigate her damages by looking for employment precludes any award
of damages for past and future lost wages. 

A wrongfully
discharged employee has a duty to mitigate damages by making a good faith
effort to obtain and retain employment.  Gulf
Consol. Int=l,
Inc. v. Murphy, 658 S.W.2d 565, 566 (Tex. 1983)(Opin. on reh=g). 
Mitigation is a defensive issue upon which the employer bears the burden
of proof in a wrongful termination case. 
Gulf Consol. Int=l, Inc., 658
S.W.2d at 566.  The adequacy of an employee=s
efforts to mitigate and the reasonableness of an employee=s explanation for rejecting a job offer
are fact questions properly left to the jury. 
Azar Nut Co. v. Caille,
720 S.W.2d 685, 687‑88 (Tex. App.‑‑El Paso 1986), affirmed,
734 S.W.2d 667 (Tex. 1987).  If a
jury finds for the employee, the employer must demonstrate either that it
established as a matter of law the employee=s
failure to mitigate, or that the jury=s
findings on this issue were so against the great weight and preponderance of
the evidence as to be manifestly unjust. 
Sterner v. Marathon Oil Co., 767 S.W.2d 686,
690 (Tex. 1989).  Since it is
undisputed Ortiz did not look for employment subsequent to her discharge, we
must decide whether the jury could have found that Ortiz=s
reason for not seeking work was reasonable. 
America West Airlines, Inc., 935 S.W.2d at 915.








Most employment is
near-impossible without the usage of hands, and it seems reasonable that Ortiz
thought she could no longer work from the pain in her hands and did not look
for work.  Ortiz felt she could have continued
to work for SCM, had medical treatment been available for her hands.  However, no one at SCM explained how to file
a worker=s
compensation claim, and she could not have afforded a doctor, because (1) she
and her husband did not have insurance and (2) her termination plunged them
into financial trouble.  At the time of
the trial, she felt even surgery could not have helped, and she did not seek
employment, because her hands were useless. 
Her hands were in such burning pain that she could do nothing with them
nor sit in one place and work.  There was
testimony that Ortiz could pick up a telephone or a spoon, count money, and
clean her house, but she also said she could not iron, shuffle paper, or cook
sometimes.

It was for the
jury to weigh the evidence and resolve any conflicts, and the verdict shows
they chose to give greater credence to Ortiz=s
testimony that the injury in her hands reasonably prevented her from seeking
employment.  The jury saw Ortiz=s hands and heard from her that she
felt she could do nothing, was in pain, and did not wish to work because of her
condition.  From the evidence, the jury
could have reasonably reached its conclusion, nor is the evidence such that the
verdict is manifestly unjust.  SCM=s third issue is overruled.

Damages
for Mental Anguish

In Issue Four, SCM
attacks the factual sufficiency of the damages for mental anguish.  








To recover damages
for mental anguish, a plaintiff must present direct evidence of the nature,
duration, and severity of the mental anguish, thus establishing a substantial
disruption in the plaintiff=s
daily routine, or the evidence of a high degree of mental pain and distress
that is more than mere worry, anxiety, vexation, embarrassment, or anger.  Latham v. Castillo,
972 S.W.2d 66, 70 (Tex. 1998). 
The amount of damages awarded also must be fair and reasonable after a
meaningful evidentiary review.  Saenz v. Fid. & Guar. Ins.
Underwriters, 925 S.W.2d 607, 614 (Tex. 1996).  Intentional or malicious conduct may be a
significant factor in determining whether mental anguish damages are
proper.  City of Tyler
v. Likes, 962 S.W.2d 489, 495-96 (Tex. 1997).  

The definition of
mental anguish is not only Aunwieldy@ but also demands that the reviewing
court quantify evidence to fit this model of muddled judicial ambiguity.  This Court has attempted to clarify and give
some guidance to the matter in the past by requiring that the evidence shows
the plaintiff=s mental
anguish is such that it incapacitates him from dealing with certain every day
activities.  See Ortiz v. Furr=s
Supermarkets, 26 S.W.3d 646, 653 (Tex.App.--El
Paso 2000, no pet.); Worsham Steel Co. v.
Arias, 831 S.W.2d 81, 86 (Tex.App.--El Paso 1992,
no writ).  Mental anguish encompasses Aa mental sensation of pain resulting
from >such
painful emotions as grief, severe disappointment, indignation, wounded pride,
shame, despair or public humiliation or a combination of any of these.=@  Ortiz, 26 S.W.3d at
653, quoting Wal-Mart Stores, Inc. v. Odem, 929 S.W.2d 513, 528 (Tex.App.--San Antonio 1996, writ denied).  The emotional pain may manifest in such a way
to prevent the plaintiff from eating, sleeping, working, socially interacting,
or carrying on other activities which the plaintiff performed daily before the
date of the injury.  Ortiz, 26 S.W.3d at 653.  

Ortiz and her
husband Rudy testified on Ortiz=s
mental condition and behavior after her discharge.  Rudy said after Ortiz arrived home crying
from work after she was terminated, that she was unable to do anything for four
months:

Q:        Do you remember that day that Nellie
[Ortiz] came home from work and she was fired?








A:                
Yeah, it was Tuesday around -- she came home around
11:30.  It was real windy and cold.  And that time, I was off.  It was my day off.

And then I opened the
door, and she was -- she was trying to open the door, also, and -- but I heard,
you know.  And then she was -- I opened
the door, and she was there, and she was so depressed and crying and in the
cold weather, you know.  She was by --
she was getting home by bus.

And then at that
time, I did have a car, but I didn=t have a driver=s
license, so I was, you know, afraid to -- to drive all the way from Lincoln to
Viscount.  So I didn=t know that -- that it was going to
happen.

Q:        And when you saw her at that time, did
you talk to her?  Did she talk to you
about it and tell you what happened?

A:         Yeah. 
She -- the only thing that she told me that she was fired.  And then the words her employer used firing
her.  She told me that Ms. Fawn told her
that just drop the keys and hit the road. 
Hit the Viscount.

                                                             .                .               .

 

Q:        Okay. 
How was she, Rudy, those next few weeks, maybe a month, a month after she was terminated?  How was she to be around at the house?

A:         Well, she was very depressed.  She always crying
all the time.  And then the only thing I
can do for her, you know, is to calm down, tell her to calm down, you
know.  And at that moment, we don=t know what to do.  We don=t
know where to run, because I don=t
know anything about laws over here.  So I
told her to calm down.  And, you know,
she hardly ate.  She hardly sleep also.  She got
nightmares.

Q:        How long did that last?  How many months did it last?

A:         Well, to be exact, it was about --
about four to five months that I -- that I -- I handled the situation, because
I know it was bad.  And besides that, she
-- she been telling me that her hands was real burning and pain, such a
pain.  And then she hardly do some things around the house also.  And I help her, you know, when it=s in my hand, you know.

 

Ortiz also
testified that she was incapacitated for about two months from worry and
depression:

Q:        How did you handle being fired?  What was it like for you in the weeks
following your termination?

A:         What did I did
at home when I was already terminated?

Q:        Yes.

A:         Oh, I was real -- I couldn=t handle my bills, nothing, my credit
cards, everything.  I just lost
everything.  I didn=t know what to do for a couple of
months.  My husband was just working four
hours.  We couldn=t make it.

Q:        And how did that feel for you?

A:         Terrible.  I went down, completely down.








Q:        Okay. 
Can you explain that a little bit? 
Were you having problems eating or sleeping?

A:         Yeah, I had problems eating and
sleeping.  I was real depressed.  I couldn=t make it.  I didn=t know what to do those months.

 

There is more than
a scintilla of evidence to uphold the jury=s
verdict.  Ortiz suffered a substantial
disruption in her daily routine:  she was
depressed (AI just
lost everything.@),
suffered sleeplessness and nightmares, and was unable to eat or do anything
around the house from two to four months after her discharge.  Here, the testimony established the
disruption was caused directly by the loss of her job and subsequent mental
pain.  Compare, e.g., Ortiz, 26
S.W.3d at 653-54 (Plaintiff testified he suffered emotional pain and was
divorced from his wife, but he did not say the mental pain caused him to be
incapable of daily activities and also said his relationships were normal and
the divorce was not due to his termination from Furr=s.).

The weight of the
evidence is also not so overwhelming as to make the verdict contrary or
manifestly unjust, as there was direct evidence of the the
nature, duration, and severity of Ortiz=s
mental anguish, thus establishing substantial disruption in her daily life.

The evidence is
legally and factually sufficient to prove Ortiz had compensable mental
anguish.  We also hold the amount of
damages was fair and reasonable in the face of the evidence of Ortiz=s mental anguish and the disruption to
her daily life caused by it.  Issue Four
is overruled.

Exemplary
Damages

In Cross-Issue
One, Ortiz alleges that the evidence was sufficient to sustain the jury=s award of exemplary damages of
$200,000.  SCM contends in Issue Five
that the evidence was both legally and factually insufficient to uphold the
jury=s verdict
on exemplary damages.








A judgment
notwithstanding the verdict is reviewable under a Ano evidence@
standard.  Williams
v. City of Midland, 932 S.W.2d 679, 682 (Tex.App.--El
Paso 1996, no writ).  We view the
evidence in the light most favorable to the jury=s
finding, considering only the evidence and inferences that support the jury=s finding, and will affirm the judgment
if there is no evidence to support it.  Williams,
932 S.W.2d at 682. 
If there is more than a scintilla of competent evidence to support the
jury=s
finding, the judgment notwithstanding the verdict should be reversed.  Williams, 932 S.W.2d
at 682.

To recover
exemplary damages in a suit alleging violation of Texas Labor Code Section
451.001, a plaintiff must prove actual malice. 
Continental Coffee Prod. Co. v. Cazarez, 937 S.W.2d 444, 454 (Tex. 1996).  Actual malice is shown by evidence of
ill-will, spite, or a specific intent to cause injury to the employee.  Continental Coffee Prod.
Co., 937 S.W.2d at 454.  Exemplary damages is
most appropriate for egregious violations of the statute.  Id. 
The fact that an act is unlawful is not a ground for an award of
exemplary damages.  Id.  Acts warranting exemplary damages are  Awanton and malicious . . . or, as
sometimes stated, somewhat . . . criminal or wanton.@  Id.

Shirley knew Ortiz=s hands were deformed and expressed to
Ortiz that her hands were Areally
bad.@  Dominguez testified that Shirley knew Ortiz=s hands had gotten worse and wanted to
circumvent Ortiz filing a worker=s
compensation claim by terminating her employment, before Estrada could show
Ortiz how to file a claim.  Ortiz
affirmed that Shirley advised her the only thing she
could do for her bad hands was to quit. 
Shirley and current SCM employee Moya denied
all aspects of Dominguez and Ortiz=s
testimony.  








There is less than
a scintilla of evidence that Shirley had the specific intent to harm Ortiz when
she fired her.  Even considering the
evidence in the light supporting the jury=s
finding, we infer that Shirley discharged Ortiz to prevent any more expenses
resulting from an employee filing a worker=s
compensation claim, rather than from any ill-will, spite, or intent to harm
Ortiz specifically.  Since the evidence
does not support finding of malice, Ortiz=s
Cross-Issue One is overruled and SCM=s
fifth issue sustained.

The judgment of
the trial court is affirmed.

 

 

August
22, 2002

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 1

Larsen, McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
The date is not part of the testimony; however, Ortiz said this happened after
Sandra Dominguez, began working there. 
SCM hired Dominguez in August 1997.





[2]
Dominguez protested that she had not wanted to sign the reprimand but Shirley
first typed up the document then forced her into signing it.





[3]
Ortiz suffered an occupational injury, recognized as a theory of recovery in
worker=s
compensation claims.  Chavis v. Dir., State
Worker=s Comp.
Div., 924 S.W.2d 439, 443 (Tex.App.BBeaumont 1996, no
writ).  An occupational
disease:  (1) arises from a gradual and
slow onset, not traceable to a definite time, place, and cause; or (2) arises
from repeated physical exposure or repeated physical traumas.  Schaefer v. TEIA,
612 S.W.2d 199, 202 (Tex. 1980). 
Occupational diseases result from a gradual exposure or cumulative
development over time, or results from repetitious physical activity.  Cearley v. Royal Globe Ins. Co., 632 S.W.2d 942, 946 (Tex.App.‑‑Fort Worth 1982, no writ).  The meaning of Ainjury@ includes the aggravation of pre‑existing
conditions or injuries.  Cooper v. St.
Paul Fire & Marine Ins. Co., 985 S.W.2d 614, 618 (Tex.App.--Amarillo
1999, no pet.).