**Affirmed in Part and Reversed and Remanded in Part and Majority Opinion filed December 29, 2020.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-18-01103-CV

---

### ROGELIO SALAS, Appellant

### V.

### FLUOR DANIEL SERVICES CORPORATION, Appellee

---

**On Appeal from the 281st District Court
Harris County, Texas
Trial Court Cause No. 2017-31173**

---

### MAJORITY OPINION

Rogelio Salas appeals the trial court's grant of no-evidence and traditional summary judgment in favor of Fluor Daniel Services Corporation ("Fluor"), contending in five issues that the trial court erroneously granted summary judgment on his workers' compensation retaliatory discharge claim under Texas Labor Code section 451.001(1) and (3). We affirm in part and reverse and remand in part.

## BACKGROUND

Salas started working for Fluor in 2015 as a pipefitter at the Chevron Phillips Chemical Company's ("CP Chem") USGC Ethylene construction project. Salas understood the temporary nature of the project and that Fluor had a reduction of force policy as the project progressed. Salas also understood that Fluor employees were provided "workers' compensation insurance coverage from Property/Casualty Insurance Company of Hartford through CP Chem's Owner Controlled Insurance Program ("OCIP") to protect [Fluor employees] in the event of work-related injury."

On January 9, 2017, while walking to a safety meeting, Salas "stepped on uneven ground causing his left knee to twist and he fell against a pipe support." Salas contacted his foreman and supervisor, Oliver Alanis, about the incident. Alanis in turn notified Fluor's safety department and took Salas to the safety office. The Health, Safety, Environment Department ("HSE") Supervisor Michael Fish took Salas to the doctor. According to the Incident Report of January 9, 2017, Salas "was taken to medical. While at medical[,] he was evaluated, determined to have no injuries, and no treatment was given." Salas was released to return to work. Two days later, Salas again complained of pain after attempting to climb stairs and was taken to a doctor to be evaluated. The doctor gave him ibuprofen and released Salas back to work. Salas continued to complain of knee pain and was assigned to the safety office. He reported to the safety office every day and "sat there all day" until he was terminated; he did not perform any work during this time. The Daily First-Aid Records of January 12-13, 2017 state that Salas had left knee pain and was given ice therapy and ibuprofen. The January 16, 2017 Daily First-Aid Record states that Salas still had knee pain.

On January 16, 2017, Fish emailed the "Employers First Report of Injury or

2

Illness" relating to Salas's January 9, 2017 injury to CP Chem employees and a Fluor HSE supervisor. CP Chem sent the same injury report to its insurance administrator. On January 19, 2017, a claims analyst for CP Chem's third-party insurance administrator was assigned to Salas's workers' compensation claim and requested additional information from Fluor about whether Salas had returned to work and what compensation he was receiving. The next day, Fluor responded, stating that "Salas has returned back to work at full duty. He is receiving full wages and hours as before the injury. . . . He is hourly. We do not owe him any partial benefits. The incident is not a lost time[.] He received treatment at Bayside Urgent Care."

Later that day, Fluor placed Salas on its reduction of force list. The list contained Salas's name and work position; it stated the date he was chosen for the reduction of force as January 20, 2017 and time as 2:30 p.m.; it stated the effective date as January 23, 2017. The list contained three signature rubrics. The first rubric, "Reviewed by: Human Resources Representative", was blank. The second rubric, "Reviewed by: Superintendent/Designee", was signed by Chris Bennett (Fluor's senior construction manager) and by Richard Aycock (Fluor's general superintendent who reported to Chris Bennett) on January 20, 2017. The third rubric, "Reviewed by: Site Manager/Designee", was blank. According to Aycock's deposition testimony, he would be informed by management that a reduction of force was necessary and that the supervisors in charge of a crew were expected to decide which employee would be subject to the reduction. He testified that crew supervisors are trusted to decide which employee is subject to reduction based on company-established factors. Aycock testified that the supervisor "passes the name of the individual" and Aycock reviews and approves the reduction without evaluating the supervisor's decision. Aycock claimed that Salas's

immediate supervisor Alanis made the decision to lay off Salas.

On January 23, 2017, Alanis notified Salas that he was being terminated. Senior Human Resources Specialist Adrian Stockton conducted an exit interview with Salas that same day, and Salas signed an Employee Separation Form, which stated Salas was being terminated because of a reduction of force. The only other person who signed the separation form was Stockton. While the project manager's signature was required for approval, only "N/A" appears on the form.

On January 26, 2017, Salas hired an attorney, who filed a workers' compensation claim that same day for Salas's January 9, 2017 injury. Salas filed suit in May 2017, alleging a workers' compensation retaliatory discharge claim under Texas Labor Code section 451.001 and requesting actual and punitive damages.

Fluor filed a traditional and no-evidence motion for summary judgment on Salas's claim. Fluor argued it is entitled to summary judgment because (1) "there is no evidence of a causal connection between Salas' workers' compensation claim and his termination"; (2) "there is no evidence that the layoffs at the project were a mere pretext for retaliation"; and (3) there is no evidence to support an exemplary damages award for Fluor's alleged retaliatory discharge. Fluor also argued it was "independently entitled to summary judgment because Salas was not physically able to perform the essential functions of his job at the time of his termination." Salas filed a summary judgment response, and Fluor filed a reply thereto.

The trial court held an oral hearing on Fluor's summary judgment motion on September 28, 2018. After the hearing, Salas filed a "Post-Hearing Brief in Response to [Fluor]'s Motion for Summary Judgment", in which he argued that he "met the standard for a protected act based on Labor Code § 451.001(3)" because he instituted or caused to be instituted a proceeding under the workers'

compensation statute. Salas argued that Fluor "evade[d] the holding" of applicable caselaw that supported his argument and erroneously argued inapplicable caselaw to support its summary judgment motion. Fluor filed a response to Salas's brief, objecting to the brief as late-filed and asserting that Salas's cited caselaw in support of his claim under section 451.001(3) is no longer applicable.

The trial court signed an order granting Fluor's summary judgment motion and dismissing Salas's claim with prejudice on September 28, 2018. Salas filed a motion for new trial, to which Fluor responded. The motion was overruled by operation of law, and Salas filed a timely notice of appeal.

ANALYSIS

On appeal, Salas challenges the trial court's grant of summary judgment in favor of Fluor on his workers' compensation retaliatory discharge claim raising five issues. We address each issue in turn.

## I.     Standard of Review

Where, as here, the trial court's summary judgment does not state the grounds for its ruling, we affirm the judgment if any of the grounds advanced is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989); *see also Muller v. Stewart Title Guar. Co.*, 525 S.W.3d 859, 868 (Tex. App.—Houston [14th Dist.] 2017, no pet.). We review a summary judgment *de novo*. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). A party seeking summary judgment may combine a request for summary judgment under the no-evidence standard with a request under the traditional summary judgment standard in a single motion. *Binur v. Jacobo*, 135 S.W.3d 646, 651 (Tex. 2004); *Cardenas v. Bilfinger TEPSCO, Inc.*, 527 S.W.3d 391, 398 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

In a no-evidence motion for summary judgment, the movant asserts that

there is no evidence of one or more essential elements of the claims for which the nonmovant bears the burden of proof at trial. *See* Tex. R. Civ. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009); *Drake Interiors, Inc. v. Thomas*, 544 S.W.3d 449, 453 (Tex. App.—Houston [14th Dist.] 2018, no pet.). The trial court must grant the motion unless the nonmovant produces summary judgment evidence raising a genuine issue of material fact. Tex. R. Civ. P. 166a(i). The nonmovant is "not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements." *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam) (internal quotation omitted). A fact issue exists if the nonmovant brings forth evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

For a traditional summary judgment motion, the movant must demonstrate that no genuine issues of material fact exist and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam). To be entitled to traditional summary judgment, a movant must conclusively negate at least one essential element of each of the nonmovant's causes of action or conclusively establish each element of an affirmative defense. *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). "Evidence is conclusive only if reasonable people could not differ in their conclusions." *City of Keller*, 168 S.W.3d at 816. If the movant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the nonmovant to come forward with competent controverting evidence raising a genuine issue of material fact. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *Swoboda v. Ocwen Loan Servicing, LLC*, 579 S.W.3d 628, 632 (Tex. App.—Houston [14th Dist.] 2019, no

pet.).

Here, Fluor sought summary judgment on traditional and no-evidence grounds "and while the burdens vary for the different types of motions, both parties presented summary judgment evidence." *See Scripps NP Operating, LLC v. Carter*, 573 S.W.3d 781, 790 (Tex. 2019). Thus, the "'differing burdens are immaterial and the ultimate issue is whether a fact issue exists.'" *Id*. (quoting *Neely v. Wilson*, 418 S.W.3d 52, 59 (Tex. 2013)). A fact issue exists if there is more than a scintilla of probative evidence. *Neely*, 418 S.W.3d at 59. More than a scintilla of evidence exists when reasonable and fair-minded people could differ in their conclusions based on the evidence. *Remaley v. TA Operating LLC*, 561 S.W.3d 675, 678-79 (Tex. App.—Houston [14th Dist.] 2018, pet. denied); *see also Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 625 (Tex. 2018); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). We review the evidence in the light most favorable to the nonmovant and indulge every reasonable inference and resolve any doubts against the motion. *Scripps NP Operating, LLC*, 573 S.W.3d at 790; *City of Keller*, 168 S.W.3d at 824.

## II.    Retaliatory Discharge

### A.    Applicable Law

Chapter 451 of the Texas Labor Code, also known as the Anti-Retaliation Law, creates a cause of action against a person who discharges or in any other manner discriminates against an employee because the employee has: (1) filed a workers' compensation claim in good faith; (2) hired a lawyer to represent the employee in a claim; (3) instituted or caused to be instituted in good faith a proceeding under the Texas Workers' Compensation Act; or (4) testified or is about to testify in a proceeding under the Texas Workers' Compensation Act. Tex. Labor Code Ann. § 451.001; *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d

54, 55 (Tex. 2011). The Legislature's purpose in enacting section 451.001 was to protect persons entitled to benefits under the Workers' Compensation Act from being discharged for exercising their statutory rights and seeking to collect those benefits. *In re Poly-Am., L.P.*, 262 S.W.3d 337, 350 (Tex. 2008) (orig. proceeding); *Parker v. Valerus Compression Servs., LP*, 365 S.W.3d 61, 66 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).

"An employer who violates this statute is subject to a retaliation claim, which constitutes 'an exception to the traditional doctrine of employment at will found in Texas law.'" *Kingsaire, Inc. v. Melendez*, 477 S.W.3d 309, 312 (Tex. 2015) (quoting *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 453 (Tex. 1996) (citation and internal quotation marks omitted)). To prove a retaliatory discharge claim, the employee must show that the employer's prohibited action would not have occurred when it did had the employee's protected conduct not occurred. *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005) (per curiam); *see also Melendez*, 477 S.W.3d at 312.

Under Texas's burden-shifting analysis for workers' compensation retaliatory discharge claims under section 451.001, the employee as part of his prima facie case must first establish a causal link between his termination and the employee's protected conduct under section 451.001. *See Datar v. Nat'l Oilwell Varco, L.P.*, 518 S.W.3d 467, 478-79 (Tex. App.—Houston [1st Dist.] 2017, pet. denied); *Parker*, 365 S.W.3d at 66; *English v. Dillard Dep't Stores, Inc.*, No. 14-04-00197-CV, 2005 WL 2875006, at *2 (Tex. App.—Houston [14th Dist.] Nov. 3, 2005, no pet.) (mem. op.). The employee does not have to prove that his participation in the protected conduct was the sole cause of his discharge. *Simon v. Pentair Valves & Controls US LP*, No. 14-16-00822-CV, 2018 WL 1542437, at *2 (Tex. App.—Houston [14th Dist.] Mar. 29, 2018, no pet.) (mem. op.); *Cardenas*,

8

527 S.W.3d at 399; *see also Cont'l Coffee Prods. Co.*, 937 S.W.2d at 450.

"Circumstantial evidence, and the reasonable inferences from such evidence, can prove the causal connection." *Cont'l Coffee Prods. Co.*, 937 S.W.2d at 450. Circumstantial evidence sufficient to establish a causal link between the employee's termination and his protected conduct includes: (1) knowledge of the employee's protected conduct by those making the decision on termination; (2) expression of a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for the discharge was false. *See Melendez*, 477 S.W.3d at 312; *Cont'l Coffee Prods. Co.*, 937 S.W.2d at 451; *Simon*, 2018 WL 1542437, at *3. Close timing between the employee's protected activity and the adverse employment action is also relevant circumstantial evidence of a causal link and of retaliatory motive. *See Cardenas*, 527 S.W.3d at 399; *Johnson v. City of Houston*, 203 S.W.3d 7, 11 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

Once the employee establishes a causal link, the burden shifts to the employer to "rebut the alleged discrimination by showing there was a legitimate reason behind the discharge." *Cont'l Coffee Prods. Co.*, 937 S.W.2d at 451; *Simon*, 2018 WL 1542437, at *3; *see also Cardenas*, 527 S.W.3d at 399. If the employer demonstrates a legitimate, non-discriminatory reason, the burden shifts back to the employee to produce controverting evidence of a retaliatory motive to survive a motion for summary judgment. *Parker*, 365 S.W.3d at 67; *see also Datar*, 518 S.W.3d at 479. "The employee must present evidence that the employer's asserted reason for the discharge or other adverse employment action was pretextual or 'challenge the employer's summary judgment evidence as failing to prove as a matter of law that the reason given was a legitimate,

nondiscriminatory reason.'" *Parker*, 365 S.W.3d at 67-68; *see also Johnson*, 203 S.W.3d at 12.

## B.     Protected Conduct

With these principles and standards in mind, we turn to Salas's first issue in which he contends the trial court erroneously granted summary judgment in favor of Fluor because "he engaged in a protected activity" under section 451.001(1) and (3).

### 1.     Section 451.001(1)

We begin by determining whether Salas engaged in protected conduct under section 451.001(1).

Section 451.001(1) states that an employer is prohibited from terminating an employee "because the *employee has filed a workers' compensation claim* in good faith", thus requiring the employee to file a claim. *See* Tex. Lab. Code Ann. § 451.001(1) (emphasis added). Section 451.001(1) does not state that an employer is prohibited from terminating its employee because (1) another company notified its insurer of the employee's injury and (2) the insurer assigned a workers' compensation claim number for a potential future workers' compensation claim. Section 451.001(1) therefore provides no support for Salas's assertion that he engaged in protected conduct because CP Chem informed its insurer about Salas's injury and the "workers' compensation insurer assigned a workers' compensation claim number and contacted Fluor" about Salas's injury.

We further note that during oral argument, Salas stated the case before us is "a section 451.001(3) case" and is not really a "section 451.001(1) case" because he did not file a workers' compensation claim as required by section 451.001(1).

Contrary to Salas's assertion, we conclude there is no evidence that "he

10

engaged in a protected activity under § 451.001(1)." Accordingly, we overrule Salas's first issue with regard to his contention that the trial court erroneously granted summary judgment in favor of Fluor because "he engaged in a protected activity" under section 451.001(1).

## 2. Section 451.001(3)

In his first issue, Salas also argues the trial court erroneously granted summary judgment in favor of Fluor because he "provided evidence that he engaged in a protected act based on Labor Code § 451.001(3)." Salas points to "the following facts" as evidence: (1) "Salas reported his on-the-job injury to his employer/supervisor", (2) "Salas received medical treatment for his injury from the company doctor", (3) "[a]fter receiving medical treatment . . . Salas told his supervisor he could not work in the field", (4) "[r]ather than work, Fluor required that . . . Salas work light duty by requiring him to sit on a couch in the safety office for the next ten days", (5) "Fluor sent emails on January 9th, 10th, 13th, 16th, and 17th to its employees regarding . . . Salas's work injury and medical treatment, including attaching medical records", (6) "CP Chem reported the injury to the worker's compensation carrier", and (7) "[t]he insurance adjuster[] assigned a Workers' Compensation claim number, referred to the injury as a 'claim,' and contacted Fluor." Salas argues his report of his on-the-job injury constituted protected conduct under section 451.001(3) because, by reporting his injury, he instituted or caused to be instituted a proceeding under the Workers' Compensation Act as required by the statute.

### a. Salas did not waive his claim under section 451.001(3)

Fluor counters that Salas "failed to preserve error on his argument that his report of his work-related injury constituted protected activity under § 451.001(3) because he did not timely assert this argument in his Response to F[luor]'s Motion

11

for Summary Judgment." Fluor claims that "Salas first raised this argument orally at the hearing on summary judgment and in a 'Post-Hearing Brief,' filed shortly after the hearing." Salas responds that (1) his "opposition to summary judgment directly argued that [he] engaged in protected [conduct] under § 451.001, including specifically citing and quoting § 451.001(3)", (2) he "also provided direct factual support for a protected act under § 451.001(3)", and (3) "even if Salas had not sufficiently pleaded a protected act under 451.001(3), by arguing the issue at summary judgment hearing without objection, Fluor agreed to try this issue by express or implied consent of the parties under TRCP Rule 67."

We reject Fluor's waiver argument. First, we note that Salas's live pleading does not limit his retaliatory discharge claim to section 451.001(1). In his first amended petition, Salas pleaded that Fluor "may not" terminate him "because [he] received an injury on the job and pursued protected activity under Labor Code Section 451.001."

Second, Salas did not limit his summary judgment response to section 451.001(1); he cited to and discussed section 451.001(3) and also provided evidence to support an argument that he engaged in protected conduct under section 451.001(3). Under a liberal reading of Salas's response along with his summary judgment evidence, Salas presented the argument that his report of his on-the-job injury constituted protected activity under section 451.001(3). *See Richmond v. L.D. Brinkman & Co. (Tex.) Inc.*, 36 S.W.3d 903, 905 n.2 (Tex. App.—Dallas 2001, pet. denied) (liberally construing response to summary motion to include preemption argument although nonmovants did not specifically state the argument).

Third, Fluor acknowledges in its appellate brief (as well as in its response to Salas's post-summary judgment hearing brief) that Salas "raised this argument

12

orally at the hearing on summary judgment." Although we do not have a transcript of the oral summary judgment hearing, Fluor admits that the issue of whether Salas's report of his on-the-job injury constitutes protected conduct under section 451.001(3) was argued at the hearing. Additionally, the trial court's summary judgment order states that the court considered the summary judgment motion, the summary judgment response, arguments of counsel, and the pleadings on file in granting summary judgment in favor of Fluor.

We conclude that Salas did not "fail[] to preserve error on his argument that his report of his work-related injury constituted protected activity under § 451.001(3)".

### b.    Salas engaged in protected conduct

We address Salas's contention that there is evidence he engaged in protected conduct under section 451.001(3) because he "reported his on-the-job injury to his employer/supervisor."

We agree with Salas that section 451.001(3) does not require an employee to actually file a workers' compensation claim. As contrasted with section 451.001(1), which requires an employee to file a workers' compensation claim to constitute protected conduct, section 451.001(3) only requires that an employee institutes or causes to be instituted a proceeding under the Texas Workers' Compensation Act in order to engage in protected conduct. *See* Tex. Labor Code Ann. § 451.001(1), (3). Several courts of appeals also agree and have held that section 451.001(3) does not require an employee to actually file a workers' compensation claim, and that an employee institutes or causes to be instituted a proceeding under the Texas Workers' Compensation Act when he informs his

employer of his on-the-job injury.[1]

---

[1] *See Hous. Auth. of City of El Paso v. Guerra*, 963 S.W.2d 946, 950 (Tex. App.—El Paso 1998, pet. denied) ("It is not necessary for a worker to have actually filed a workers' compensation claim to invoke the statutory protection; the worker need only take steps toward instituting a compensation proceeding to be protected. 'Informing one's employer of an on-the-job injury sufficiently "institutes" a compensation proceeding within the meaning of the law.'"); *Stephens v. Delhi Gas Pipeline Corp.*, 924 S.W.2d 765, 771-72 (Tex. App.—Texarkana 1996, writ denied) (same); *Heinsohn v. Trans-Con Adjustment Bureau*, 939 S.W.2d 793, 795 (Tex. App.—Fort Worth 1997, writ denied) ("Moreover, when an employer knows an employee is injured, the employer may not frustrate the purposes of the workers' compensation law by discharging the employee before the claim can be filed. Merely by the act of notifying the employer of the injury, an injured employee takes steps toward 'instituting a compensation proceeding' within the meaning of the statute.") (internal citations omitted); *Palmer v. Miller Brewing Co.*, 852 S.W.2d 57, 60-61 (Tex. App.—Fort Worth 1993, writ denied) (Section 451.001 "can be violated even when the employee was fired before filing a claim for compensation so long as the evidence shows that the employee took steps towards instituting a compensation proceeding. The act of informing the employer of the injury sufficiently institutes a compensation proceeding . . . .") (internal citations omitted); *Worsham Steel Co. v. Arias*, 831 S.W.2d 81, 84 (Tex. App.—El Paso 1992, no writ) (rejecting argument that "no cause of action for wrongful discharge exists unless a claim for workers' compensation has been filed at the time of discharge" but finding "all that is required to prosecute such a claim is evidence that shows an employee took steps towards instituting a proceeding" under section 451.001, and informing his employer of the work-related injury constitutes "an affirmative step toward instituting a proceeding under" section 451.001); *Hunt v. Van Der Horst Corp.*, 711 S.W.2d 77, 80 (Tex. App.—Dallas 1986, no writ) (concluding that an employee who informed his supervisor that he had suffered an injury on the job "instituted a proceeding" under the Workers' Compensation Act and, "[t]o hold otherwise would be to reward employers who are particularly adept at anticipating and quick in firing potential workers' compensation claimants over those who are slower to retaliate"); *Tex. Steel Co. v. Douglas*, 533 S.W.2d 111, 114-16 (Tex. Civ. App.—Fort Worth 1976, writ ref'd n.r.e.) (concluding that employee did not have to file a workers' compensation claim because the employee's case was pleaded "on the theory that the employer fired him because he had instituted a 'proceeding under the Workmen's Compensation Law'", and evidence that employee's superintendent knew of employee's injury was sufficient to raise a fact issue on whether employee was fired because he instituted a proceeding under the Workers' Compensation Act).

We note that several of the courts of appeals cases were decided under former Texas Revised Civil Statutes Annotated article 8307c, which was repealed and codified in 1993 without any substantive changes in Texas Labor Code sections 451.001-.003. *See supra* n.1; *see also Tex. Mexican Ry. Co. v. Bouchet*, 963 S.W.2d 52, 57 (Tex. 1998); *Cont'l Coffee Prods. Co.*, 937 S.W.2d at 445; *Harris Cty. v. Louvier*, 956 S.W.2d 106, 107 n.1 (Tex. App.—Houston [14th Dist.] 1997, no pet). Therefore, these cases are applicable to the issue before us regarding section 451.001(3).

There is nothing in the language of section 451.001(3) that requires an employee to file a workers' compensation claim. *See* Tex. Lab. Code Ann. § 451.001(3). If protected conduct under section 451.001(3) required the actual filing of a workers' compensation claim, the Legislature would and could have easily stated so, just as it did in section 451.001(1). If the filing of a claim were required under both section 451.001(1) and (3), it would make no sense to have both subsections. The Fort Worth Court of Appeals in *Texas Steel Company* recognized this years ago, stating:

> If the Legislature's intention was that the cause of action it created by Art. 8307c, V.A.T.S., should in all instances only arise in cases where the employee was fired after he had filed the claim for compensation provided for in Art. 8307, . . . then the law would be completely useless and would not accomplish the purpose for which it was enacted. This is true because all the employer would have to do in order to avoid the consequences of the statute would be to fire the injured workman before he filed the claim.
>
> *　　　　　*　　　　　*
>
> Under the appellant's contention advanced in this case there could be no 'proceeding under the Workmen's Compensation Act' unless the employee had prior thereto filed a claim for compensation with the Industrial Accident Board. Appellant's argument appears to be that the filing of the claim for compensation is the start of the 'proceeding' that is referred to in Art. 8307c.
>
> If that contention is correct then the Legislature's act in inserting into the statute the words 'instituted, or caused to be instituted . . . any proceeding under the Texas Workmen's Compensation Act' would have been nugatory and superfluous because that situation would have been covered, even if those words had been left out of the statute completely, by the part of the statute that creates a cause of action against an employer for firing an employee because he filed a claim [in now subsection 451.001(1)].

533 S.W.2d at 115-16 (ellipsis in original).

We conclude that an employee need not file a workers' compensation claim

to engage in protected conduct under section 451.001(3); an employee institutes or causes to be instituted a relevant proceeding under section 451.001(3) when he informs his employer of his on-the-job injury. *See Guerra*, 963 S.W.2d at 950; *Stephens*, 924 S.W.2d at 771-72; *Heinsohn*, 939 S.W.2d at 795; *Palmer*, 852 S.W.2d at 60-61; *Worsham Steel Co.*, 831 S.W.2d at 84; *Hunt*, 711 S.W.2d at 80; *Tex. Steel Co.*, 533 S.W.2d at 114-16.[2] Here, Salas informed his employer through his immediate supervisor, Alanis, that he sustained an injury when he twisted his knee and fell against a pipe support and was taken to the doctor by Fish, a safety department supervisor.

Therefore, there is sufficient evidence that Salas instituted or caused to be instituted a proceeding under the Workers' Compensation Act when he informed his supervisor of his injury and thus engaged in protected conduct under section 451.001(3). Accordingly, we sustain Salas's first issue with regard to his argument that the trial court improperly granted summary judgment because he "engaged in protected activity" under section 451.001(3).

---

[2] *Cf. In re Poly-Am., L.P.*, 262 S.W.3d at 350 ("The Legislature's purpose in enacting section 451.001 was to protect persons entitled to benefits under the Act and to prevent them from being discharged for seeking to collect those benefits. *See Tex. Steel Co.*, 533 S.W.2d 111, 115 (Tex. Civ. App.—Fort Worth 1976, writ r ref'd n.r.e.). Since recovery of benefits under the Workers' Compensation Act is the exclusive remedy available to injured employees of subscribing employers, *see* Tex. Lab. Code § 408.001(a), the availability of remedies for retaliatory discharge protects employees' exercise of their statutory rights to compensation under the Act. *See Padilla v. Carrier Air Conditioning*, 67 F.Supp.2d 650, 664 (E.D. Tex. 1999); *Mid-South Bottling Co. v. Cigainero*, 799 S.W.2d 385, 389 (Tex. App.—Texarkana 1990, writ denied). In accordance with these principles, the anti-retaliation provisions of the Act must protect employees even before they have actually filed a claim, because otherwise 'the law would be completely useless and would not accomplish the purpose for which it was enacted . . . . [A]ll the employer would have to do in order to avoid the consequences of the statute would be to fire the injured workman before he filed the claim.' *Tex. Steel Co.*, 533 S.W.2d at 115.").

## C. Causal Link

Next, we address Salas's second issue, in which he contends that he presented evidence of a causal link between his protected conduct under section 451.001(3) and his termination. In addressing whether a fact issue exists, we examine several factors that may establish the existence of a causal link.

### 1. Decision maker's knowledge

We begin by determining whether there is evidence that a decision maker at Fluor had knowledge of Salas's protected conduct. Salas contends that several Fluor employees, including superintendent Aycock, testified that Salas's supervisor Alanis was the decision maker responsible for placing Salas on the reduction of force list. Salas argues the evidence shows that Alanis, Aycock, and "a litany of other Fluor employees" knew he suffered an on-the-job injury but that Fluor tried to hide and obfuscate the identity of the decision maker responsible for his termination. Salas also argues that Alanis and Aycock both knew of his injury but claimed they did not make the decision to place him on the reduction of force list and terminate him.

The record before us contains conflicting evidence as to who the decision maker was placing Salas on the reduction of force list. Alanis averred in an affidavit that he knew of Salas's work-related injury but did not place Salas on the reduction of force list. Instead, Alanis swore:

> 2. My name is Oliver Alanis. I worked for Fluor . . . at the CP Chem site . . . . In January 2017, I held the position of foreman, and I was the direct supervisor of Rogelio Salas. On or about January 9, 2017, I learned that Mr. Salas suffered an on-the-job injury. As part of my job duties, I filled out an incident report statement for this injury and took Mr. Salas to the doctor for medical treatment.
>
> 3. Several weeks later, I was told via paperwork, that Fluor was ending Mr. Salas' employment. I did not select or cho[o]se Mr. Salas

to be part of any reduction in force or termination, and I was not a part of and did not make the decision to end Mr. Salas' employment or subject him to any so-called reduction in force. I am not aware who selected Mr. Salas for termination or a reduction in force. I am also not aware of the reasons why Mr. Salas, as opposed to another pipefitter, was selected for termination. I only know that someone above me at Fluor decided to end Mr. Salas's employment.

4. In addition, Richard Aycock never told me in January 2017 to select one of the pipefitters in my crew for a reduction in force. Instead, I was only told via paperwork that Fl[uo]r was ending Mr. Salas's employment. I also did not sign or fill out any reduction of force paperwork for Mr. Salas.

5. I do not know of any reason why Mr. Salas would be terminated as opposed to other pipefitters in my crew. Mr. Salas was a good and hard worker, and if I had been asked to select a pipefitter from my crew in January 2017 for a reduction in force, I would not have selected Mr. Salas.

On the other hand, Aycock testified that it was Alanis who decided Salas should be included on the reduction of force list and that it was Alanis's responsibility as crew supervisor to make that decision. Aycock also testified about his limited role with regard to placing Salas on the reduction of force list and Salas's subsequent discharge. According to Aycock, after Alanis decided "on his own" who is subject to a reduction of force, Aycock reviewed the reduction of force paperwork and signed off on the form.[3]

Additionally, Fluor's corporate representative and senior manager at human resources, Deborah Bataillon, testified during her deposition that Alanis, Aycock, and Stockton had the authority to terminate Salas and they decided Salas was subject to a reduction of force. Despite Bataillon's testimony that Stockton was a decision maker, Stockton testified to the contrary. He stated in his deposition that

---

[3] Here, the reduction of force list was signed only by Aycock and his superior Chris Bennett; it was not signed by Alanis or any other Fluor employees.

18

he was not "part of the decision about who should be laid off", he had no "involvement in the decision to lay off" Salas, and he does not know who actually decided "to make Mr. Salas subject to a layoff."

Salas also testified at length during his deposition. With regard to who the decision maker was, Salas testified that Alanis told him on the day he was terminated that the decision to terminate him "came from up above." According to Salas, Alanis told him that Aycock "was the man that ultimately chose to put [Salas] on the termination list."

Relying on Aycock's deposition testimony, Fluor asserted below that Alanis was the decision maker who put Salas on the reduction of force list. Fluor also asserted that Aycock was the decision maker approving Salas's selection for a reduction of force. At oral argument, Fluor affirmed that, during his deposition testimony, Aycock did not disclaim that he was a decision maker and that he decided to terminate Salas based on Alanis's recommendation.

We conclude that the evidence in the record at least raises a fact issue that Alanis, Aycock, or both were decision makers in selecting Salas for a reduction of force; Fluor even acknowledges in its brief that there is "a question of fact regarding who made the decision to select Salas for layoff." Therefore, we next consider whether Alanis and Aycock, identified as decision makers, had knowledge of Salas's injury.

Alanis averred in his affidavit (and Fluor does not dispute) that Alanis learned of Salas's injury on January 9, 2017, took Salas to get medical treatment, and even filled out an incident report describing the injury. The record contains the Supervisor's Initial Incident Report, in which Alanis described when, where, and how Salas's injury occurred on January 9, 2017.

However, although Fluor does not disclaim that Aycock was a decision maker, Fluor disputes Aycock had any knowledge of Salas's injury based on Aycock's deposition testimony. Fluor argues that Aycock testified he did not know of Salas's injury until he was contacted about taking his deposition almost a year after the decision to terminate Salas was made. Fluor also argues that Salas incorrectly asserts that his summary judgment exhibit 15 provides evidence of Aycock's knowledge.

Salas cites to exhibit 15 which contains a January 9, 2017 email sent by Fluor employee William Walley to numerous Fluor employees, including Aycock, attaching the January 9, 2017 Incident Report regarding Salas's injury. It also contains emails from January 10, January 13, January 16, and January 17, 2017 from Walley to the same Fluor recipients attaching Fluor's Daily First-Aid Records regarding Salas's injury.

Fluor claims that "emails Aycock was copied on" were not evidence that Aycock knew Salas suffered an on-the-job injury because the January 9, 2017 Incident Report sent to Aycock via email (1) was not an injury report, (2) was "prepared for 'information only,'" (3) identified the "Specific Injury Type" in the report as "None", and (4) stated Salas was evaluated and "determined to have no injuries." However, the title of the report is not determinative. The Incident Report specifically states that Salas's left knee was hurt, that he twisted his left knee, and that he fell against a pipe support.

Even without a clear and unequivocal statement in the Incident Report that Salas suffered an injury, the documents provide sufficient information that Salas suffered an on-the-job injury. Beginning with the January 9, 2017 Daily First-Aid Record sent to Aycock, it states under the "Nature and Cause of Injury" rubric: "Slip/Trip, Left knee pain", and under the "Treatment Administered/Disposition"

20

rubric: "Very minor". The January 12, 2017 Daily First-Aid Record provides under the "Nature and Cause of Injury" rubric: "Slip/Trip, Left knee pain", and under the "Treatment Administered/Disposition" rubric: "Ice 20min x 3 per day, Iprin 400mg"[4]. The January 13, 2017 Daily First-Aid Record provides under the "Nature and Cause of Injury" rubric: "Slip/Trip, Left knee pain", and under the "Treatment Administered/Disposition" rubric: "Iprin 400mg, Ice Therapy x 20 minutes". The January 16, 2017 Daily First-Aid Record states under the "Nature and Cause of Injury" rubric: "Slip/Trip, Left knee pain", and under the "Treatment Administered/Disposition" rubric: "Eval at Occ Health".

Fluor does not dispute that Aycock received the Incident Report and the four Daily First-Aid Records via email. Because these documents show that Salas suffered an injury and received medical treatment for it, we reject Fluor's contention that Salas failed to produce evidence of Aycock's knowledge of Salas's injury. Instead, we conclude the documents Aycock received via email constitute sufficient evidence to raise a fact issue regarding whether Aycock had knowledge of Salas's injury at the time Salas was placed on the reduction of force list and terminated.

We conclude the record contains sufficient evidence to raise a fact issue as to whether Alanis and/or Aycock were decision makers and had knowledge of Salas's on-the-job injury at the time Salas was placed on the reduction of force list and terminated.

### 2.    Timing

Salas also contends that the timing of his termination is evidence of a causal link between his protected conduct and Fluor's adverse employment action.

---

[4] Ibuprofen is the generic name for Iprin. *See* https://www.drugs.com/cons/i-prin.html.

Salas informed Alanis of his injury shortly after it happened the morning of January 9, 2017. Aycock received information regarding Salas's injury on January 9, 10, 13, 16 and 17. Salas was placed on the reduction of force list on January 20, 2017, and terminated three days later. The lapse of time between Salas informing Fluor that he suffered an injury and Fluor's adverse employment action is merely 11 days. This is a short time. "Close timing between an employee's protected activity and the adverse action can provide the causal connection required for a prima facie case." *Johnson*, 203 S.W.3d at 11; *see also Cardenas*, 527 S.W.3d at 399.

### 3. Company policy and difference in treatment

Salas asserts that Fluor violated its company policy because he was placed on the reduction of force list without consideration of the six factors Fluor required the decision maker in charge of selecting employees for reduction of force to evaluate in making the selection. In support of his assertion, Salas points to Bataillon's deposition testimony stating that Alanis (as Salas's supervisor) selected Salas for a reduction of force and, in making his decision, was required to evaluate company-prescribed factors before selecting Salas. Salas also points to Alanis's affidavit in which he averred that he "did not select or cho[o]se Mr. Salas to be part of any reduction in force or termination, and I was not a part of and did not make the decision to end Mr. Salas' employment or subject him to any so-called reduction in force." Salas asserts that the evidence shows Fluor violated its policy because Alanis "never selected Salas for termination, much less reviewed the factors for a reduction in force."

In the trial court, Fluor claimed that Aycock instructed Alanis as the crew supervisor to select an employee for reduction of force using six specific factors. Aycock testified that Alanis was the supervisor who made the decision to place

22

Salas on the reduction of force list. He testified that supervisors are required to use "several factors" in deciding whom to select for a reduction of force. Aycock testified he does not "evaluate any of the factors or the basis for [a supervisor] reaching that decision" but trusts his supervisors, including Alanis, to make the decision to select an employee for a reduction of force. Bataillon also testified that Alanis selected Salas for a reduction of force and, in making his decision, Alanis was required to evaluate six factors before selecting Salas.

After claiming that Alanis was the decision maker who selected Salas for a reduction of force and who was required and expected to consider six factors in making his decision, Fluor cannot now claim that Alanis's affidavit is not competent evidence simply because Alanis (1) controverted Aycock's and Bataillon's testimony and (2) averred that he never selected or was part of the decision to select Salas for a reduction of force. Fluor cannot claim that Alanis was the decision maker and considered required factors in reaching his decision and simultaneously claim Alanis was not the decision maker who could not "competently testify as to whether or not the six factors were reviewed or considered when Salas was selected" and thus whether Fluor adhered to its policies.

We also note that Salas's Employee Separation Form does not contain all required signatures for approval. The form provides in capitalized, bold letters that approval and signatures are required from "Project Management" and "Human Resources". However, only Stockton signed the form in the rubric provided for "Human Resources"; the rubric for "Project Management" states "N/A".

Salas also argues that Fluor treated him "different[ly] from other employees because the proper chain of command at Fluor did not sign and review the 'reduction of force' form for Salas." Salas argues that "Fluor required a human

resources representative, the site manager, and the superintendent to sign and review the reduction of force forms." According to Salas, "every other reduction of force form in the month of January — the entirety of the scope of the forms produced in this lawsuit — included signatures from the three supervisors in the chain of command" while Salas's form was only signed by a superintendent.

Eight reduction of force forms listed over 30 employees for the month of January 2017 and Salas correctly states that every other form (besides his) was signed by a Human Resources Representative, Superintendent/Designee, and Site Manager/Designee. Nonetheless, Fluor argues that the lack of signatures on Salas's form is not evidence he was treated differently because Bataillon "simply confirmed" that the reduction of force form "selecting Salas for layoff was not signed by a human resources representative or site manager", but she did not "attest that any F[luor] policy or procedure required all three signatures." However, Bataillon did more than "simply confirm" the lack of two other signatures; she confirmed that "Salas' [form] was different than the other employees who are laid off."

The reduction of force list form specifically states: "Human Resources (HR) must review this document prior to final approvals. List must be received by HR no later than 12:30 noon the day before the scheduled ROF. Failure to do so may delay processing the ROF. Deviations from this format or changes in dates, times, or names must also be reviewed by HR and Site Manager/Designee. Factors considered in layoffs may include, but are not limited to: expertise, project need/remaining scope of work, performance, attendance, discipline, and training." This language provides some evidence that approval of a reduction of force selection is required by signatures on every form. Salas's form is different than the other reduction of force forms. It is the only form lacking all three signatures; it is

24

only signed by Aycock and Bennett in the superintendent space.

Fluor also contends that Salas cannot show "he was treated differently than all other employees terminated in the month of January whose Reduction in Force forms contained three signatures" because he failed to present evidence that the other employees were similarly situated. Fluor contends that "[g]iven that these employees were on a different crew, had a different supervisor, held different positions, and had different physical capabilities, Salas failed to sufficiently demonstrate that he was similarly situated to these employees." However, this argument is unpersuasive. First, there were several employees who actually held the same position as Salas. Second, the number of signatures on the reduction of force forms is not dependent on or specific to an employee's position, capabilities, crew, or supervisor. There is nothing to suggest that employees working in different positions, on different crews, or under different supervisors would receive something other than all three signatures on their reduction of force forms. Additionally, based on the form's language, each employee placed on the reduction of force list for layoff is selected using the same factors listed on the form. Therefore, employees are selected based on the same criteria and are comparable for purposes of a reduction of force.

We conclude there is some evidence in the record showing that Fluor violated its company policies and treated Salas differently than other employees who were placed on the reduction of force list and terminated.

### 4. Negative attitude

Salas does not assert that anyone at Fluor expressed a negative attitude toward him after he reported his injury, nor does the record contain any evidence of a negative attitude by any Fluor employee.

## 5. False reason for termination

Lastly, Salas contends there is substantial evidence that Fluor's proffered reason for his termination was false. Salas contends that, although Fluor identified Alanis, Aycock, and Stockton (via Bataillon's deposition testimony) "as responsible for the 'reduction in force'", a "careful review of the process" shows that "Alanis had the sole discretion and authority to terminate" Salas. In that regard, Salas points out that (1) Stockton testified he was not part of the decision to select employees for a reduction of force; (2) Aycock testified that Alanis selected Salas for a reduction of force and Aycock only signed off on the form without an independent review; and (3) Bataillon testified (a) she does not know why Alanis selected Salas for a reduction of force and (b) only Alanis knows why he selected Salas. According to Salas, Alanis's affidavit testimony (stating he neither selected nor had any part in the decision to select Salas for a reduction of force) constitutes evidence that Fluor's assertion Salas was terminated because Alanis selected him for a reduction of force is false.

We cannot agree with Fluor that the evidence is undisputed and "clearly established that Salas was terminated as part of ongoing" reductions of force. Instead, we agree with Salas that there is evidence in the record supporting Salas's contention that the reason Fluor provided for his termination is false.

First, considering Fluor asserted that Alanis chose Salas for a reduction of force after Aycock instructed Alanis to select employees and provide names of the selected employees, Fluor cannot now claim Alanis's affidavit constitutes no evidence because Alanis averred he was not the decision maker. Fluor cannot claim Alanis was the decision maker who selected Salas for a reduction of force per Aycock's instruction to select an employee from his crew while also claiming Alanis's affidavit cannot refute Salas was terminated because of a reduction of

force because Alanis (according to his affidavit) did not select Salas and has no knowledge why Salas was terminated.

In his affidavit, Alanis stated (1) he was told "via paperwork" that Fluor was terminating Salas and he "did not sign or fill out any reduction of force paperwork for" Salas; (2) he did not select and was not part of the decision to select Salas for a reduction of force or termination; (3) he did not know who chose Salas and "only know[s] that someone above [him] at Fluor decided to end Mr. Salas' employment"; and (4) Aycock never told Alanis in January 2017 to select a pipefitter on his crew for a reduction of force. Thus, Alanis's affidavit controverts Fluor's contention that (1) Aycock instructed Alanis to select a pipefitter on his crew for reduction of force and provide him with the name of the selected employee; (2) Alanis selected Salas for a reduction of force and gave Aycock Salas's name; and (3) Aycock "reviewed and approved Salas's selection for layoff as part of a reduction in force".

Second, even if Salas admitted during his deposition testimony that there were "constant" reductions of force (as Fluor contends), this alleged "admission" is not "undisputed evidence" that Salas was terminated because of a reduction of force. Third, contrary to Fluor's assertion, evidence that other pipefitters were terminated due to a reduction of force does not translate to "undisputed evidence" that Salas was terminated for that same reason. Also, Fluor has not pointed to evidence that any of these employees were injured and not working at the time they were approved for a reduction of force.

Fourth, Fluor's contention that Salas's signature on his Employee Separation Form is "undisputed evidence" that he was terminated because of a reduction of force is unpersuasive. Salas testified that before signing the Employee Separation Form, he told Stockton he "didn't understand why [he] was being laid off if [he]

27

was still getting medical treatment or . . . still had to go to the doctor." Salas also testified he asked Stockton where the employee comment section was on the separation form, but Stockton told him the form does not have a comment section:

> Q.     Okay.  And what do you recall Mr. Stockton saying in terms of any conversation between you and he?  You said you asked him about employee comments?
>
> A.     Yes.  I had told him that this separation form normally comes with any employee comments on the bottom before you sign the name or under the name, and he said these forms didn't come with that.  I said, "Every other form that I've seen, most of the other forms come with any comments done by the person signing to contradict or contest what's going on."
>
> Q.     Okay.   And what, if any, response did he make to that statement?
>
> A.     Like he said, this form doesn't have that section.

Salas's testimony provides some evidence that he did not "acknowledge" or agree he was being terminated as part of a reduction of force.

Fifth, Fluor claims "Salas's prior written statements made under oath to the Texas Workforce Commission when he was applying for unemployment benefits in which he stated the reason for the end of his employment was for a layoff" is undisputed evidence he was terminated because of a reduction of force.  However, Fluor's citation to the record does not contain the alleged written statements by Salas, and we have not located a document containing these alleged statements in the record.

After reviewing all relevant factors, we conclude there is summary-judgment evidence that raises an issue of material fact with regard to whether there is a causal link between Salas's protected conduct under section 451.001(3) and his termination.  The trial court erred in concluding to the contrary, and therefore we sustain Salas's second issue.

28

**D.    Legitimate Reason for Termination and Pretext**

In his third issue, Salas argues that he has "directly disputed [Fluor]'s claimed legitimate reason for termination."  He argues that Alanis's affidavit refutes Fluor's assertion that Salas was terminated because Alanis selected him for a reduction of force.  Fluor counters that it "conclusively established that Salas was terminated for a legitimate, non-retaliatory reason wholly unrelated to Salas's reporting of his on-the-job injury" and that Alanis's affidavit creates no "triable issue of fact".

Based on the record before us, we agree that there is evidence Fluor terminated Salas for a legitimate, non-discriminatory reason — namely a reduction of force.  However, Fluor did not conclusively prove its stated legitimate reason because Salas presented evidence that the stated reason is false or a pretext.

Fluor heavily relied on Aycock's deposition in which he testified that (1) he instructed Alanis that reductions needed to be made to the pipefitter workforce according to senior management; (2) Alanis selected Salas for layoff based on specific factors mandated by Fluor; (3) Alanis placed Salas on the reduction of force list selected for layoff on January 20, 2017; and (4) Aycock reviewed and approved Alanis's decision to include Salas on the reduction of force list.  But Salas presented evidence refuting Aycock's testimony.  Salas presented Alanis's affidavit which, contrary to Fluor's assertion, raises a fact issue regarding whether Fluor's stated reason for Salas's termination is false.

Alanis's affidavit completely contradicts Aycock's testimony[5] that Alanis selected Salas for a reduction of force and layoff because Alanis testified (1)

_____

[5] It also contradicts Bataillon's testimony because she claimed that Alanis selected Salas for a reduction of force and layoff based on Fluor-mandated factors, and this decision was later approved by Aycock.

Aycock never told him in January 2017 to select a pipefitter on his crew for a reduction of force; (2) he did not select and was not part of the decision to select Salas for a reduction of force or termination; (3) he "did not sign or fill out any reduction of force paperwork for" Salas; (4) he did not know who chose Salas and "only know[s] that someone above [him] at Fluor decided to end Mr. Salas' employment"; and (5) he was told "via paperwork" that Fluor was terminating Salas. Moreover, Alanis averred that Salas was a "good and hard worker, and if [Alanis] had been asked to select a pipefitter from [his] crew in January 2017 for a reduction in force, [he] would not have selected Mr. Salas."

We also note that the lapse of time between Salas informing Fluor that he suffered an injury and Fluor's adverse employment action is merely 11 days. There is evidence that Aycock learned of Salas's work-related injury shortly after it happened and thus knew of the injury when he approved Salas's termination. *See Cardenas*, 527 S.W.3d at 399 (a small time lapse between employee's protected conduct and employer's adverse employment action is circumstantial evidence of a retaliatory motive); *Parker*, 365 S.W.3d at 67 (same).

We conclude there is some evidence that Fluor's stated reason for Salas's termination is false or a pretext. Therefore, the trial court erred in determining that Fluor conclusively established it terminated Salas for a legitimate, non-discriminatory reason, and that Salas did not produce controverting evidence. *See Cont'l Coffee Prods. Co.*, 937 S.W.2d at 451-52. Accordingly, we sustain Salas's third issue.

### E. Work Performance

Salas argues in his fourth issue that summary judgment on his retaliatory discharge claim was also erroneously granted because Fluor's authorities do not support its contention that it properly terminated Salas based on his inability to

perform his work. Salas also argues that Fluor "never alleged that it fired Mr. Salas because he was unable to perform his job" and "cannot now use this basis as a justification for its retaliation." Fluor responds that it was entitled to summary judgment as a matter of law because "Texas courts have consistently held in the context of workers' compensation retaliation cases that 'an employer may terminate an employee who sustains a job related injury if it ultimately appears that, due to the nature of the injury, the employee can no longer perform the essential functions of his position.'"

The cases Fluor relied on in the trial court and now on appeal do not support its argument that Salas's termination was proper because he could not perform his work when Fluor did not terminate him for that reason. In each of the cases Fluor cites, the employer terminated its employee for the stated reason that the employee could not perform his job. *See Phillips v. SACHEM, Inc.*, No. 03-13-00346-CV, 2014 WL 7464035, at *5 (Tex. App.—Austin Dec. 31, 2014, no pet.) (mem. op.) ("In this case, there is no dispute that SACHEM's proffered reason for terminating Phillips was that he was unable to work at the time he was terminated."); *Love v. Geo Grp., Inc.*, No. 04-12-00231-CV, 2013 WL 1223870, at *1, *5 (Tex. App.—San Antonio Mar. 27, 2013, no pet.) (mem. op.) (employer's human resources representative stated, "My decision [to terminate Mr. Love] was based on the information I received from his physician and Mr. Love's inability to meet minimum job responsibilities and physical requirements of being a detention officer") (brackets in original); *Clevinger v. Fluor Daniel Servs. Corp.*, No. 10-11-00288-CV, 2012 WL 1366575, at *3 (Tex. App.—Waco Apr. 18, 2012, no pet.) (mem. op.) (Clevinger was terminated because he could not perform his job); *Tri-Cty. Elec. Co-op., Inc. v. Tidwell*, 859 S.W.2d 109, 111-12 (Tex. App.—Fort Worth 1993, writ denied) ("evidence shows that Tidwell was kept on the payroll

for approximately two years before he was terminated, and then only when he was not able to obtain a full medical release[;] Tidwell's termination was due to his inability to obtain a full medical release and return to work").

Here, Fluor never stated nor in any way implied that it terminated Salas because he was unable to perform his job. Fluor was not entitled to summary judgment on the basis that it properly terminated Salas because he was unable to perform his work, and the trial court erroneously granted summary judgment on that basis. Accordingly, we sustain Salas's fourth issue.

## III. Punitive Damages

Salas contends in his fifth and final issue that he "provided sufficient evidence of exemplary damages related to his termination and discrimination." Salas claims he presented evidence that Fluor "fraudulently alleged it terminated him based on a reduction of force" and did so with the intent to harm him.

Before an employee may recover punitive damages from an employer for a violation of the Anti-Retaliation Law, he must prove actual malice by clear and convincing evidence. *See Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 628-29 (Tex. 2004); *Cont'l Coffee Prods. Co.*, 937 S.W.2d at 452-54. For purposes of chapter 451, actual malice means "ill-will, spite, evil motive, or purposeful injury." *See Sw. Bell Tel. Co.*, 164 S.W.3d at 628; *Cont'l Coffee Prods. Co.*, 937 S.W.2d at 452, 454. "By requiring evidence of ill-will, spite, or a specific intent to cause injury to the employee, courts will ensure that only egregious violations of the statute will be subject to punitive awards." *Cont'l Coffee Prods. Co.*, 937 S.W.2d at 454.

Salas has not directed us to any evidence that raises a fact issue on whether Fluor acted with actual malice in this case, and our review of the record has not

revealed any such evidence.  An employer's violation of section 451.001 alone does not support an award of punitive damages.  *Id*. at 453; *Hertz Equip. Rental Corp. v. Barousse*, 365 S.W.3d 46, 60 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).  Because there is no evidence of actual malice, we conclude the trial court correctly granted summary judgment on Salas's punitive damages claim. Accordingly, we overrule Salas's fifth issue.

## CONCLUSION

We affirm the trial court's summary judgment with respect to Salas's retaliatory discharge claim under Texas Labor Code section 451.001(1) and Salas's punitive damages claim.  We reverse the trial court's summary judgment regarding Salas's retaliatory discharge claim under Texas Labor Code section 451.001(3) and remand that claim to the trial court for proceedings consistent with this opinion.

/s/     Meagan Hassan
Justice

Panel consists of Justices Christopher, Bourliot, and Hassan (Christopher, J. concurring in result only).

33